### HIRAM MORRISON V. BARRY, ELLISON & ETHERIDGE.

#### No. 624.

1. **Superior Title—Vendor's Right of Rescission.**—Where the vendor of land reserves in the deed a lien for purchase money, the superior title remains in him until the money is paid, and in the event of default in its payment, he can rescind the contract of sale, and his deed for the land to another will convey the absolute title.

2. **Same—Prior Lien and Debt of Vendor as Affecting the Right.**—The right of such vendor to resell ·the land to another person is not affected by the fact that an unpaid purchase money note given by himself for the land is then outstanding in the hands of a third party to whom it has been transferred, but without any conveyance of title to the land accompanying such transfer.

3. **Same—Prior Lien and Debt as Defeating the Right—Assumption of Debt.**—At the time such vendor conveyed to his first vendee, Alston, the latter, as part of the consideration, and in addition to his own note given for the land, assumed the payment of the vendor's said outstanding note, which had been conveyed to a mortgage company, but such company failed to accept the assumpsit, and in a foreclosure suit brought by it on the note asked for no personal judgment against the vendee, Alston, *Held*, that an acceptance by the company of the assumpsit of Alston would have ended the vendor's right of rescission, but that it was unaffected in the absence of such acceptance and under the facts.

APPEAL from Dallas.    Tried below before Hon. CHARLES FRED. TUCKER.

*Thomas Turney*, for appellant.—1. The court erred in finding, as a conclusion of law, that the conveyance from George to Alston, though retaining in its face a lien for the purchase money, none of which has ever been paid, must be construed as an executed contract, and that it conveyed the title to Alston, to the exclusion of George and of Morrison, his subsequent vendee.    Baker v. Ramey, 27 Texas, 53; Roosevelt v. Davis, 49 Texas, 463; McPherson v. Johnson, 69 Texas, 487; Kennedy v. Embry, 72 Texas, 390; Lanier v. Foust, 81 Texas, 188; Pierce v. Moorman, 84 Texas, 596.

2. George and wife sold to Alston the interest they had in the land, and not the interest of the mortgage company. The consideration was, Alston was to pay George $1500 and assume the mortgage debt. The assumpsit made him, as between him and George, primarily liable. It also created an obligation against Alston in favor of the company for the amount of the debt, which obligation the company had the right, in its election, to enforce. But such right was canceled by the disaffirmance of the contract by the parties to it, before the company had accepted, or in any way recognized the assumpsit, or Alston's ob-

ligation to them.   McCown v. Schrimpf, 21 Texas, 24–28; Wallis v. Beauchamp, 15 Texas, 307; Arnold v. Lyman, 17 Mass., 404; Lawrence v. Fox, 20 N. Y., 274; Berley v. Taylor, 5 Hill, 585; Keller v. Ashford, 100 U. S. (Law. Ed.), 669–673; Milling Co. v. Eaton, 66 Texas, 401; 24 Law. Rep. Ann., 369, and notes; Crowell v. Currier, 27 N. J. Eq., 156; Crowell v. Hospital, 27 N. J. Eq., 650; Gilbert v. Sanderson, 56 Iowa, 349; 41 Am. Rep., 153; Stove Works v. Caswell, 16 Law. Rep. Ann., 85.

3. The deed of George and wife to Alston left the title in them, subject to the right of Alston to comply with his obligation to them. This Alston or his vendees might have done, and so have perfected their title any time before repudiating their contract otherwise than by mere delay. But failing in this, they have no right whatever in the land. Kaufman & Runge v. Brown, 83 Texas, 44; Ransom v. Brown, 63 Texas, 189; Stitzle v. Evans, 74 Texas, 599; Walker v. Emerson, 20 Texas, 711; Harris v. Catlin, 53 Texas, 8.

*Barry, Ellison & Etheridge,* for themselves.—1. A vendor in an executory contract can not rescind, unless the owner of the purchase money notes. Millican v. Ewing, 64 Texas, 259; Moore v. Glass, 25 S. W. Rep., 128; Henderson v. Samuels, 25 S. W. Rep., 470; Blum v. Rodgers, 56 Texas, 6; Cassady v. Franklin, 55 Texas, 452; Russell v. Kirkbride, 62 Texas, 456.

2. The contract between George and Alston being entire, could not be disaffirmed in part and affirmed in part. If Alston had given George two notes, one for $2000 and the other for $16,500, and George had transferred the one for $16,500 to the mortgage company, could it be contended that he could thereafter, without the consent of the mortgage company, rescind the sale? Was not such the substance of the transaction in which Alston, instead of making two notes and George's transferring one, made one note and assumed one which George already had outstanding? The court below may have committed an abstract error in concluding the contract between George and Alston was executed, but the fact remains that George was not the owner of the purchase money obligations, and was not in a position to rescind the contract. Nass v. Chadwick, 70 Texas, 157.

RAINEY, ASSOCIATE JUSTICE.—The conclusions of fact of the court below we find to be correct, and the same are adopted as the conclusions of this court, as follows:

" On October 18, 1889, N. W. George and wife conveyed to A. S. Alston a tract of land in Dallas County, estimated in the deed to contain 1347 acres, all the tract conveyed to said George by H. H. Rawlins, on November 9, 1885. The consideration expressed in the deed was $1 cash, and the note of Alston to George for $2000, payable to the order of George two years after date, with interest at 10 per cent per annum after maturity, and the assumpsit by Alston of a note

given by George to the Western Mortgage and Investment Company, Limited, for $16,000, as stated in the deed, and interest thereon, dated October 23, 1888. To secure the payment of both notes by Alston a lien was reserved in the face of the deed. The note to the mortgage company was not before the parties when the deed to Alston was made, and they mistook the amount of it. It was in fact for $16,500 instead of $16,000; and on discovery of the error Alston and George agreed to correct the error by having a credit of $500 entered on the $2000 note, and that Alston should be bound for the whole amount of the other note; neither George nor any one under him has claimed more than $1500 on the $2000 note.

"Alston never paid anything on either of the notes named, but took possession of the land under his deed and held it as hereinafter shown, and his vendees under him respectively held it and enjoyed the rents till the 200 acres in controversy herein was sequestered by Morrison in this suit.

"On April 7, 1890, Alston conveyed said land to Chapman Bradford, the consideration expressed in the deed being $19,500 cash and other valuable considerations paid by Bradford to Alston.

"On June 4, 1892, said Bradford, warranting title only against himself and his assigns, the deed reciting a consideration of $100 paid by defendants herein, Barry, Ellison & Etheridge, conveyed to them 200 acres part of the said 1347 acres tract—the same 200 acres claimed by Morrison in this suit. All the above mentioned deeds properly authenticated and recorded. On December 26, 1891, the Western Mortgage and Investment Company, Limited, brought suit to collect the $16,500 note and interest above mentioned, and to foreclose its mortgage on all land conveyed by George to Alston, except the 200 acres herein claimed by Morrison, which 200 acres were not embraced in the mortgage to said company, being homestead of George. The mortgage to said company was dated October 23, 1888, and promptly recorded, and was given to secure said note for $16,500, with interest and attorney's fees, of even date therewith. Both Alston and Bradford were made defendants in said suit for foreclosure sought against all of them. No answer was made by any of the defendants, and on March 29, 1892, judgment was rendered against George for $22,450.40, including interest and attorney's fees provided for in said note, and foreclosing said mortgage lien against all of the defendants. Personal judgment was rendered against George only. By virtue of said judgment, the mortgaged land was regularly sold by the sheriff of Dallas County, July 2, 1892, and bid in by said company at the price of $10,000, which was credited on its judgment.

"On May 10, 1891, George transferred and delivered said $2000 note to Hiram Morrison, indorsing the same as follows: 'Transferred to H. Morrison for value received, this the 10th day of May, 1891. Wiley N. George.' The note was also indorsed by Ed S. Alston before delivering to Morrison. The note was thus transferred and delivered to

Morrison as collateral security for certain indebtedness of George to Morrison, and was thus held by Morrison until February 20, 1892, when said George executed and delivered to Hiram Morrison the following instrument, viz: 'On the 20th day of February, 1892, H. Morrison held a note made by Albert S. Alston to me for $2000, dated October 18, 1889, and due at two years, same having been indorsed by me to him before its maturity. Now, to settle all matters between Morrison and me in relation to said note, said Morrison has given me credit on notes owing by me to him to the extent of $155, and these credits are in full of all demands of me against him growing out of said note. [Signed] Wiley N. George.' Morrison then became the absolute owner of said note. On the same day (February 20, 1892), George and his wife conveyed to Morrison the entire tract of land conveyed by George and wife to Alston, including said 200 acres in controversy herein, for the consideration of $350 cash, the assumption by Morrison of attorney's fees in litigation pending and in contemplation in relation to the land conveyed, Morrison agreeing to hold George harmless in relation thereto, and at the same time and part of the same transaction, Morrison gave George credit for the $155 mentioned in the instrument above set out. He was advised by George that the note should be credited with $500, for the reasons herein before mentioned. The deed from George and wife to Morrison provided that the land was conveyed to Morrison subject to the mortgage in favor of the Western Mortgage and Investment Company, Limited, above mentioned. The deed to Morrison was properly acknowledged and recorded, February 23, 1892.

"In the mortgage given by George to said mortgage company is contained this provision: 'It is expressly agreed, that the taking of this trust deed shall in nowise impair the vendor's lien existing upon said land as evidenced by the note of said W. N. George for $8047.50, executed to H. H. Rawlins and transferred to the Western Mortgage and Investment Company, Limited, and now owned by said company.'

"By virtue of a sequestration sued out by the plaintiff, the sheriff took possession of the 200 acres of land sued for on July 29, 1892, and on plaintiff's replevy bond it was turned over to him on September 8, 1892. The rental value of the 200 acres was $400 a year; and from the time of sequestration to the date of judgment the rental value was $283.33."

*Conclusions of Law.*—The principal issue involved is whether or not George had the power to rescind the contract of sale of the land made by him to Alston.

It is well settled by the decisions of the Supreme Court of this State, that where the vendor of land reserves a lien upon the land sold to secure the payment of the purchase money, the superior title remains in him until the purchase money is paid, and if there is default in the payment of the purchase money as stipulated in the contract, he can

rescind the contract, and a deed to said land made by him to another party conveys the absolute title to said land to said party. Certain conditions may arise from the conduct and acts of the vendor which would defeat his right to rescind such contract. Did any such condition arise under the facts of this case which defeated the right of George to rescind the contract with Alston? When George executed the mortgage on the 1147 acres of land, and the vendor's lien note due Rawlins was transferred to the mortgage company, the title to the land was vested in George. The transfer of the Rawlins note to the mortgage company did not vest any title in the company, for there was no transfer of any title to said company by Rawlins, if any was reserved by him, which the evidence fails to show; consequently the only right held by said company by virtue of said note was a lien upon the land to secure the amount of same. The same right existed by virtue of the mortgage, except the lien to secure the note embraced the whole 1347 acres, while the mortgage embraced only 1147 acres. The mortgage company has never asserted any right by virtue of the Rawlins note. It foreclosed, by suit, its mortgage on the 1147 acres, ignoring any right it may have had to a lien on the other 200 acres by virtue of said note. We are of opinion, that the holding of the lien by the mortgage company in the manner as shown by the evidence did not in any way affect George's title to the land, and his right to deal with the title was the same as though no lien existed. We have not been cited to any decision, nor do we know of any, that holds, that because the land is incumbered by a lien, the owner's right to contract in relation to the title is abridged thereby.

It is contended that George forfeited his right to rescind by reason of the contract made by him with Alston for the sale of said land, by which, as part consideration for the land, Alston assumed to pay the mortgage debt due the mortgage company. There is no question but that by the assumption of said indebtedness Alston became liable to said mortgage company for the full amount of said mortgage indebtedness, provided the said company saw proper to accept him as payor. While the said company was under no obligation to do so, it could have made Alston liable to it by accepting the provisions of the contract in its favor, and this right existed until default was made by Alston and the contract rescinded by George. But it seems that said company ignored the contract of assumpsit by Alston, and looked alone to George for the payment of said indebtedness. When suit was brought by the mortgage company to recover its debt and foreclose its mortgage, no personal judgment was sought against Alston, but as against him a foreclosure of the lien only was asked and obtained. While we are not prepared to say that the failure of the mortgage company to recover a personal judgment against Alston in the foreclosure proceedings would preclude it from afterward recovering such judgment, yet, under the facts of this case, we are of opinion that the

mortgage company would not have such a right after George rescinded the sale.

The evidence fails to show that any steps whatever have been taken by the mortgage company to hold Alston liable, and from all the facts we think it fair to presume that said company never accepted the assumpsit of its indebtedness by Alston. The company failing to accept, as above stated, George had the right, when Alston made default of the payment of the purchase money as he had contracted to do, to rescind the contract and re-enter the land; and when George rescinded the contract Alston was released from all indebtedness, not only to George, but to the mortgage company also.

The court below was of opinion that the relation of the parties were as though Alston had executed his note for the amount of the mortgage, and same had been transferred to the mortgage company. If such had been the case, there could be no question that George did not have the right to rescind. But the mortgage company failing to accept the assumpsit of Alston, the relation of George and Alston stood as though Alston had agreed to pay George that amount, and George was the owner of the obligation at the time of the rescission, in which case there could be no question of George's right to rescind. In this we think the analogy drawn by the court below fails. The fact that George had transferred Alston's note to Morrison as collateral to secure a debt due by George to Morrison did not preclude George from transferring to Morrison such title as he held—which was the superior title. It is the law of this State that the vendor can transfer the superior title when reserved by him to one to whom he had previously transferred the note given for the purchase money. White v. Cole, 9 Texas Civ. App., 277.

To hold under the circumstances of this case that George did not have the right to rescind, would in our judgment be a great injustice. We would be holding that a man could sell his land on a credit, and if the vendee refused or failed to pay off and discharge the indebtedness assumed by him he could, nevertheless, hold the land and prevent the vendor from utilizing it to pay off the mortgage indebtedness, which in many instances would cause the land to be sacrified—leaving an indebtedness against the vendor which might otherwise have been paid off had the right to control the land remained with him.

We are of opinion that the judgment of the court below should be reversed, and judgment should be here rendered for appellant for the land in controversy, and it is so ordered.

*Reversed and rendered.*

Delivered February 13, 1895.