## L. C. HILL v. H. C. HOELDTKE ET AL.

No. 2192. Decided January 24, 1912.

**1.—Sale—Rescission—Vendor's Lien—Fraud.**

A vendee who had subsequently reconveyed the land to his vendor in pursuance of an agreement rescinding the sale, was sought to be held personally liable to the holder of a vendor's lien note given by a previous purchaser of which he had assumed payment in his purchase. A plea by him of fraud in the sale, in that another outstanding lien had been represented by his vendor as discharged,

was not available in defense where his vendor had already acquired and cancelled that note and he had thereafter agreed with his vendor on the rescission in ignorance of the falsity of the representation that it had been paid when he bought. The alleged fraud was immaterial to the issue, not having affected his conduct in the rescission of the sale. (Pp. 598-600.)

### 2.—Assumption of Vendor's Lien—Statute of Frauds.

A promise to pay one's own debt to a creditor of the promissee, instead of the promissee himself, as in case of the assumption, as part of the purchase price of land, of payment of an outstanding vendor's lien note on which the seller was liable to another, is not within the Statute of Frauds. (P. 600.)

### 3.—Assumption of Incumbrance—Personal Liability—Acceptance—Rescission.

Where the purchaser of land assumes payment of an outstanding incumbrance and the holder thereof accepts such promise, the purchaser, though not notified of such acceptance, can not terminate his liability by a contract between himself and his vendor rescinding the sale, to which the holder of the incumbrance was not a party. (Pp. 600-603.)

### 4.—Same.

By acceptance on the part of the holder of an incumbrance of the promise of the purchaser of the land to assume its payment, the latter became the principal debtor to the holder, the obligation of his vendor being in the nature of a surety. It was not necessary for the holder to notify the party assuming payment of his acceptance of such undertaking, and the agreement to assume payment could not be revoked by contract for rescission and reconveyance between the vendor and vendee. Spann v. Cochran & Ewing, 63 Texas, 240, followed. (Pp. 600-603.)

Error to the Court of Civil Appeals, Sixth District, in an appeal from Fannin County.

Hoeldtke sued Horstman and others. Hill, one of the defendants, obtained writ of error on a judgment of the Court of Civil Appeals reversing a judgment in his favor as to his personal liability and rendering it against him.

*McGrady & McMahon,* for plaintiff in error.—The defense of fraud set up by Hill was good as against his personal liability. Green v. Chandler, 25 Texas, 148; Drury v. Haden, 111 U. S., 223; Merritt v. Robinson, 35 Ark., 483; Woods v. North, 25 Tenn., 309; Tapp v. White, 59 Tenn., 165; Crawford v. Keihler, 73 Tenn., 547; Keifer v. Rodgers, 19 Minn., 32; Stewart v. Lester, 49 Hun, 58; McLaren v. Cochran, 44 Minn., 255; Harlow v. LaBrun, 155 N. Y., 278; Stevenson v. Marble, 84 Fed., 23; Thomas v. Coultas, 76 Ill., 493; McLain v. Parker, 129 S. W., 504; 25 Cyc., 1182; Northrop v. Hill, 57 N. Y., 351; Nav. Pub. Co. v. Fishburn, 2 Posey (U. C.), 596; State v. Snyder, 66 Texas, 696.

Hill not having been notified by plaintiffs that they had accepted his said promise, and in ignorance of such acceptance having thereafter on July 11, 1907, rescinded the land trade with McCleary and made a contract with McCleary for a valuable consideration and parted with things of value and changed his legal status with reference to the property wholly in ignorance of the fact that the plaintiffs were relying upon his, Hill's, promise to pay their notes, and in ignorance of the fact that they had accepted him, Hill, as paymaster, such release by McCleary in the trade of July 11, 1907, operated to release and discharge Hill from liability upon such notes. Ward v.

Greene, 88 Texas, 177; Shapleigh v. Wells, 90 Texas, 110; Dalton v. Raney, 75 Texas, 516; Shepherd v. May, 115 U. S., 505; Laings v. Byrne, 34 N. J. Eq., 52; Orwell v. Hospital, 27 N. J. Eq., 650; Oneill v. Clark, 33 N. J. Eq., 444; Keller v. Ashburn, 133 U. S., 610; Loeb v. Willis, 100 N. Y., 231; Bull v. Tittsworth, 29 N. J. Eq., 73.

*J. W. Gross* and *G. W. Wells,* for defendants in error.—Plaintiffs having accepted defendant's assumption and promise to pay the notes sued prior to July 11, 1907, the court should have rendered judgment thereon in favor of plaintiffs against defendant. Hill v. Hoeldtke, 117 S. W., 217; Morrison v. Barry, 10 Texas Civ. App., 22; Huffman v. Mortgage Co., 36 S. W., 306, 13 Texas Civ. App., 169; Patterson v. Tuttle, 27 S. W., 758; Mays v. Sanders, 36 S. W., 108; Wingate v. Loan Assn., 15 Texas Civ. App., 416; Smith v. Loan & Trust Co., 51 S. W., 517, 21 Texas Civ. App., 170.

Having accepted defendant's promise, it was not necessary for plaintiffs to give defendant notice of that fact. Hill v. Hoeldtke, 117 S. W., 217; Morrison v. Barry, 10 Texas Civ. App., 22; Huffman v. Mortgage Co., 36 S. W., 306, 13 Texas Civ. App., 169; Davis v. Calloway, 30 Ind., 112, 5 Am. Dec., 671; Keller v. Ashford, 133 U. S., 610.

The undisputed evidence having shown that the $140 note upon which defendant in error based his charge of fraud, was canceled and surrendered to McCleary shortly after the trade of October, 1906, or shortly before said trade, and a release of the lien duly executed, together with the note being tendered to defendant in error upon the trial, no injury did or could have resulted to defendant in error by reason of said note, and therefore no fraud was perpetrated on him, and no injury caused, and he was not entitled to rescind said contract by reason of said alleged fraud. Bremond v. McLean, 45 Texas, 18; Moore v. Cross, 87 Texas, 561.

MR. JUSTICE DIBRELL delivered the opinion of the court.

H. C. Hoeldtke filed suit January 20, 1908, in the District Court of Fannin County against F. W. Horstman, B. S. McLeary, L. C. Hill and J. M. Leach, and alleged that on or about March 13, 1905, the said F. W. Horstman executed and delivered to plaintiff a note for $690, payable January 1, 1909, with interest at eight percent, payable annually, and providing for maturity of principal upon failure to pay the annual interest.

The note sued on was given by the defendant, Horstman, to plaintiff in lieu of four notes aggregating $690, including $40 interest, two of which notes for $175 each had been previously given by one J. J. Dutton to D. E. Taylor and two for $150 each by F. W. Horstman to J. J. Dutton for the purchase price of fifty-seven acres of land in Fannin County against which the vendor's lien was retained to secure the payment of said notes. J. J. Dutton conveyed the fifty-seven acres of land to the defendant, Horstman, on or about December 9, 1902, and Horstman, as indicated above, assumed the payment of the two notes for $175 each due by Dutton to Taylor, which were a

charge upon the fifty-seven acres of land, and, in addition to assuming the payment of said two notes, executed to Dutton two other notes for $150 each, the assumed payment and the two notes executed aggregated $650 principal.

On November 6, 1905, Horstman conveyed the fifty-seven acres of land to B. S. McLeary and wife and B. S. McLeary assumed the payment of the S. W. Horstman note for $690, which was due on or before January 1, 1909. McLeary also gave to Horstman as a part of the consideration for said land his two certain notes to operate as a second lien on the land, one for $140, due December 1, 1907, and one for $195, due December 1, 1908.

By regular transfer the note for $195 given by McLeary to Horstman became the property of the defendant, J. M. Leach, who filed his cross-action setting up the ownership of such note.

On October 16, 1906, the defendant, B. S. McLeary, conveyed the fifty-seven acres of land to the defendant, L. C. Hill, and, as a part of the consideration for the land, Hill assumed the payment to plaintiff of the note for $690 that had been given plaintiff by S. W. Horstman and the payment of which had been assumed by B. S. McLeary. Hill also assumed the payment of the note given by McLeary to Horstman for $195 afterwards owned by the defendant, Leach.

Shortly after McLeary sold the fifty-seven acres of land to Hill and Hill assumed the payment of plaintiff's note, plaintiff accepted such assumption, which fact, however, was not known to the defendant, Hill.

On or about July 11, 1907, the defendants, B. S. McLeary and L. C. Hill, entered into an agreement whereby the sale of the fifty-seven acres of land by McLeary to Hill on October 16, 1906, was rescinded and a deed was made by Hill to McLeary, a part of the consideration for such conveyance being the assumption of the payment of the $690 note to plaintiff by said B. S. McLeary. To this contract and agreement plaintiff was not in any manner privy.

At the time the defendant, Hill, purchased the land of the defendant, McLeary, there was outstanding against the land in addition to the note for $690 due plaintiff and the note for $195 due the defendant, Leach, a note for $140, due December 1, 1907, and which was a second lien on the land. McLeary represented at the time the trade was made with Hill that this note had been paid. As a matter of fact, however, said note had not been paid at the time the trade was made and was then a subsisting lien against the land, but was within a week or ten days thereafter returned to B. S. McLeary by his brother, Earnst McLeary, the owner thereof, for cancellation, and has ever since been in the possession of the defendant, McLeary. At the time the defendant Hill reconveyed the land to McLeary he was not aware of the facts in regard to the status of the $140 note on the day of said purchase and hence his reconveyance to McLeary of the land was not because of any fraud supposed to have been practiced upon him by McLeary.

The plea of fraud on the part of the defendant Hill was not made until February 14, 1908, a short time after he learned the facts in regard to the $140 note.

The plaintiff on the trial sought judgment against both McLeary and Hill on the note for $690 and a foreclosure of the vendor's lien on the fifty-seven acres of land which had been retained in all the notes, and defendant Leach sought to recover against the same parties on his note for $195 with foreclosure of vendor's lien. The defendant Hill sought relief against a personal judgment upon two grounds, first, because he claimed that by agreement with McLeary, his vendor, the land was reconveyed to McLeary, and McLeary assumed the payment of said notes and released him, and, second, if he was not released by such agreement and reconveyance he was released on account of fraud which was practiced on him by McLeary at the time he purchased the land on October 16, 1906, in that McLeary represented that the note for $140, which was a charge on the land in addition to those assumed by Hill, had been paid, when, as a matter of fact, at that time it had not been paid, which fact was not known to defendant Hill until a short time before February 14, 1908.

Judgment was rendered in favor of plaintiff Hoeldtke and the defendant Leach for their notes, interest and attorney's fees against the defendants Horstman and McLeary with foreclosure of the vendor's lien on the land as against all the defendants. No personal judgment was rendered against the defendant Hill. Upon appeal the Court of Civil Appeals reversed and rendered judgment against Horstman, McLeary and Hill on the notes with foreclosure of vendor's lien.

The statement of the case as made by the pleadings and the findings of fact by the Court of Civil Appeals present but one issuable question of law for determination by this Court. That question is, whether the promise of a vendee of land to his vendor to pay the debt of such vendor to his creditor who holds a lien on the land to secure such debt, can be revoked by the vendee and vendor by an agreement to which the creditor or mortgagor is not privy, after the creditor or mortgagor has accepted the assumption and promise of such vendee to pay his debt.

Before entering upon a discussion of this question, we will dispose of the question of fraud so earnestly and ably presented by counsel as affording the defendant Hill a defense against a personal judgment in favor of plaintiff and defendant Leach.

The finding of the jury upon special issues submitted to them by the court is to the effect that at the time the defendant Hill purchased the fifty-seven acres of land of McLeary, he was made to believe that the note for $140, a charge upon the land purchased, had been paid, and that Hill was influenced by that statement in making the purchase. We agree with the Court of Civil Appeals in its conclusion that a finding upon that issue is immaterial, as the other findings of fact eliminate from the case the question of fraud.

There was no rescission or attempted rescission of the purchase by Hill of the fifty-seven acres of land from McLeary, on account of the fraud or misrepresentation that had been made him by McLeary in respect to the payment of the $140 note. The pleadings of Hill disclose that he agreed with McLeary on July 11, 1907, to convey back the land and revoke his obligation to pay the debt of McLeary

theretofore assumed by Hill, and that he knew nothing of the status of the $140 note at the date of his conveyance to McLeary, and only learned in February, 1908, the note was unpaid at the time he made his purchase. Hence he could not have possibly been influenced in July, 1907, by any fraud that McLeary had practiced upon him at the time of his purchase of the land, for he had not then discovered such fraud. His rescission of the contract of sale and attempted revocation of his obligation to pay plaintiff the debt due by McLeary to plaintiff was superinduced by other causes than McLeary's fraud.

It was shown practically without contradiction that within a few days after Hill purchased the land of McLeary the note for $140, the subject of the fraud, was delivered to McLeary for cancellation, and at the time of trial was tendered into court, together with a formal release of the lien on the land securing the payment of the note. If Hill had discovered the misrepresentation made him by McLeary before McLeary secured the note for cancellation and had then manifested his intention to rescind the contract we are not prepared to say that he could not have done so and relieve himself of his obligation to plaintiff arising out of the assumption to pay the debt of McLeary. But in view of the facts of this case, in what respect was Hill injured or any right of his impaired? He had, as shown by his pleading, reconveyed the land to McLeary and thereby rendered it impossible for him to be affected in any particular by the $140 note, whether paid or unpaid. He had never assumed its payment, and rested under no obligation by reason of said note after he had conveyed the land to McLeary. If the note was unpaid, so far as he was concerned, it was a charge only against the land in which he had no further interest. The mere fact that there might have been a misrepresentation amounting to fraud on the part of McLeary at the time of the purchase of the land by Hill would be no ground for revoking the obligation of Hill on the assumption and promise to pay plaintiff's note, unless such fraud was an inducing cause of Hill's purchase of the land, or in some way caused him to seek and obtain the rescission of his purchase from McLeary. Where a fraud has been committed in the procurement of the sale of land, and before its discovery by the defrauded party full reparation of all injury has been made, or the probable consequential injury or prejudice to the rights of the party defrauded have been fully arrested, we do not understand the law to be that such an act of fraud will vitiate and revoke the purchase.

At the time the fraud was discovered the intended or probable consequential injury had been cured and averted, and no right of Hill's had been impaired or could suffer by reason of the fraud that may have been practiced by McLeary. The writ of error seems to have been granted in this case under the impression that the fraud was discovered and contract rescinded by Hill before the $140 note was secured by McLeary for cancellation, but the record does not support such conclusion. The fact is there was never any rescission or attempted rescission of the contract of purchase by Hill on account of the alleged fraud. So that we think the question whether the obligation of Hill to pay the note due plaintiff could be revoked by

Hill and McLeary in a transaction between them to which plaintiff was not a party is to be determined independent of the question of fraud. This was the view taken by the majority opinion of the Court of Civil Appeals. (Hoeldtke v. Horstman, 128 S. W., 642.)

The promise of Hill being to pay a debt he had incurred to Mc-Leary to plaintiff in discharge of the debt due plaintiff by McLeary was not within the statute of frauds. The plaintiff accepted the promise of Hill to pay said note, although Hill seems to have had no notice of this acceptance. When these facts concurred the obligation of Hill to pay plaintiff his note was as binding as if Hill had executed and delivered plaintiff his written obligation promising to pay same, and could no more be revoked by any subsequent agreement between Hill and McLeary without the consent of plaintiff than could any other obligation of Hill be revoked independent of the assent of the payee whose rights had been established by the concurrence of a promise to pay, a moving consideration and an acceptance of such obligation. The relation thus established is purely contractual. McLeary was indebted to Hoeldtke upon the note he had assumed and Hill was indebted to McLeary in a like sum as a part consideration for the land, and in obligating himself to pay Hoeldtke he was but obligating himself to pay a debt he owed to McLeary, but to McLeary's creditor, Hoeldtke, and when Hoeldtke agreed with McLeary to accept Hill's promise, Hill became the principal debtor to Hoeldtke and McLeary surety for the debt. This arrangement embraced all the elements of a binding contract. There was a valuable consideration and mutuality of obligation. Hill was no longer a debtor of McLeary, but of Hoeldtke. McLeary had no cause of action against Hill, except in the event that Hill failed to pay Hoeldtke, and then only upon the principle that the surety may recover from the debtor whose debt he has been compelled to pay. "It is not necessary that the holder of the mortgage should notify the purchaser who has assumed the mortgage of his acceptance of the promise to pay the debt." (Jones on Mortgages, vol. 1, sec. 752.) The theory that the assumption of the debt of the grantor's creditor by the grantee is nothing more than an agreement of indemnity against the mortgage debt and may be revoked by a reconveyance of the land, does not seem to have ever been recognized by any ruling of any court in this State that we are aware of. We doubt if such a rule obtains in any jurisdiction in the United States, where the creditor has accepted the substituted obligor as in this case. This question seems to have been determined by the Supreme Court of this State in the case of Spann v. Cochran & Ewing, 63 Texas, 240. In that case Cochran & Ewing bought of Watson & Lurue a printing press outfit, and assumed the payment of a note for $800 due Spann, which was secured by a chattel mortgage on the property so purchased. Payment seems to have been resisted upon the theory that the promise was to pay the debt of another and therefore within the statute of frauds, and because there was no privity of contract, and because there was an abandonment of the property by Cochran & Ewing. It appears from the brief statement of the case that Spann was not a party to the contract between Cochran & Ewing on the

one hand and Watson & Lurue on the other, from which it may be
inferred there was no aceptance on the part of Spann, except as may
be inferred from his suit against both parties.   The trial court re-
fused to enter a personal judgment against Cochran & Ewing, but
the Supreme Court in reversing that case directed that a personal
judgment should be rendered against both parties, and further directed
that in the event that Watson and Lurue paid the judgment they
should have execution over against Cochran & Ewing for such an
amount.   From this ruling it clearly appears that the Supreme Court
held Cochran & Ewing, who had assumed to pay the debt of Watson
and Lurue to Spann, became the principal debtors by their assump-
tion and their grantors became the sureties of the vendees.   (Brant
on Suretyship & Guaranty, sec. 208.)   The opinion was rendered
by Judge Stayton and he has established a principle of law applica-
ble to the case at bar, which case is analogous to that case.   With
reference to the nature of the contract he said: "It is believed, how-
ever, that such an agreement between a debtor and a third person,
made upon valuable consideration, gives to the creditor a cause of
action on which he may sue and recover from the person who has so
contracted to pay him a debt originally due only by the person to
whom the promise is made." . . .

"We are of the opinion that, under the facts of this case, the ac-
tion may be maintained against Cochran & Ewing, not only for the
purpose of foreclosing the chattel mortgage, but also for the purpose
of enforcing from them the payment of the debt due to Spann; and
this as a personal obligation."

In the Spann case, supra, there does not appear to have been an
acceptance of the assumpsit of the grantees to pay the creditor's
debt, and notwithstanding the grantees had abandoned the property,
they were held to be personally responsible on their promise.   In
this respect the case at bar is much stronger as the findings show
an acceptance by Hoeldtke of the grantee's promise to pay, and upon
greater reason should an abandonment or reconveyance of the prop-
erty not defeat the right of plaintiff to a personal judgment.

As bearing upon the question under discussion we refer to the
following cases from which numerous authorities may be gathered
and the subject pursued without limit.   Spann v. Cochran & Ewing,
63 Texas, 240, and cases there cited; Huffman v. Western Mtg. &
Invest. Co., 13 Texas Civ. App., 169; Morrison v. Barry, 10 Texas
Civ. App., 22, 30 S. W., 376; Hoeldtke v. Horstman, 128 S. W.,
642, and cases there cited; Gifford v. Corrigan, 117 N. Y., 257, 6
L. R. A., 610; Keller v. Ashford, 133 U. S., 610.

Following the case just referred to comes that of Huffman v.
Mortgage & Investment Co., supra, decided by the Court of Civil
Appeals, where the doctrine discussed in this opinion is fully sus-
tained as follows:   "Where, however, there has been an acceptance
upon the part of the creditor then a release by the original promisor
does not affect the creditor's right to recover from the party assum-
ing the debt."

To a like effect is the case of Morrison v. Barry, supra, decided
by the Court of Civil Appeals, where it is distinctly held that upon

an acceptance of the assumpsit the promise becomes irrevocable. In that case it is held that a failure of the creditor to accept the assumpsit or to take some steps to hold the promisor liable upon his promise would leave it within the power of the vendor by an act of rescission of the sale to revoke the promise of the vendee to the creditor. Since the case at bar is based upon a different state of facts we are not called upon to decide the question whether or not an acceptance on the part of the creditor is necessary to prevent a revocation of the assumpsit and we do not decide that question. It will not be amiss, however, to suggest that the ruling in the case of Morrison v. Barry, above referred to, seems to be in conflict with that in the case of Spann v. Cochran & Ewing, supra.

A question very similar to that under investigation was before the New York Court of Appeals in the case of Gifford v. Corrigan, 6 L. R. A., 610, in which Judge Finch said: "Is this release, thus executed, a defense to this action? I shall not undertake to decide, if, indeed, the question is open, whether in the interval between the making of the contract and the acceptance and adoption of it by the mortgagee, it was or was not revocable, without his assent. However that may be, the only inquiry now presented is whether it is so revocable after it has come to the knowledge of the creditor, and he has assented to it, and adopted it as a security, for his own benefit. My judgment leads me to answer that question in the negative."

Judge Hodges in speaking for the majority of the Court of Civil Appeals in this case has so ably and elaborately presented the issues that we desire to quote from his opinion at some length as expressive of our views, as follows: "So far as our investigation has been extended, all of the cases where this question has been involved concede that the promise of the grantee becomes irrevocable when the mortgagee has in some manner acted upon it, with the exception of two, one in California and the other in New Jersey. (Biddell v. Brizzolara, 64 Cal., 354; Laings v. Byrne, 34 N. J. Eq., 52.) These, however, have become so isolated by the subsequent trend of American adjudication that they may now be regarded as being without weight as judicial authority upon this question. Certainly, it may be said that they are at present almost, if not entirely, alone in espousing the doctrine which distinguishes them from the great body of juridicial opinions. In those cases where it is held if the mortgagee has in some manner acted upon the promise of the grantee that the liability of the latter becomes fixed, it is not claimed that this action must be such as would create an estoppel against the grantee. It seems to be sufficient if it is such as to evince an acceptance, or an adoption of the promise by the mortgagee. If this be the true view, then it follows, irresistably, that the grantee can not thereafter relieve himself of his assumed obligation without the consent of the creditor whose assent fixed his status. This would seem to be in accord with the general principles governing the right of contracting parties. When Hill purchased this land from McLeary he, in effect, held back that portion of the consideration which was due to Hoeldtke and Leach from the purchase price. This he undertook to pay to them, or to the holders of the notes, not to benefit McLeary, but in order

to discharge an incumbrance against the property which he had purchased, and as a part of the consideration. We do not think it was essential in order to fix the liability of Hill that he should have received actual notice of the plaintiffs' assent to or acceptance of his promise made for their benefit. When he accepted the deed from McLeary containing the recitation of his assumption of those outstanding obligations, it was an unconditional promise upon his part to pay those notes according to their terms. It was not a mere offer by him to make a contract, but an absolute contractual undertaking."

Upon a careful consideration of the questions presented we find no reason why the ruling of the Court of Civil Appeals in this case, as expressed in the opinion of the majority of that court, should be disturbed, and the judgment of the Court of Civil Appeals will be affirmed, and it is so ordered.

*Affirmed.*