### BREAUX et ux. v. BANKER et al.

#### No. 3087.

Court of Civil Appeals of Texas.
Beaumont.

April 15, 1937.

Rehearing Denied June 30, 1937.

Gordon, Lawhon, Sharfstein & Bell, of Beaumont, and B. T. McWhorter, Jr., of Port Arthur, for appellants.

Smith, Smith & Boyd, of Beaumont, for appellees.

WALKER, Chief Justice.

By his warranty deed, dated 17th of December, 1924, appellant E. H. Breaux conveyed to Mr. and Mrs. Elmer Preston Webb Lot No. 1 of Breaux Acres addition of Jefferson county, hereinafter referred to as Lot No. 1; in part consideration, the Webbs executed to appellant their promissory note of even date with the deed in the sum of $1,950, payable in monthly installments of $10, beginning with the 17th day of January, 1925, secured by the vendor's lien retained both in the deed and in the note against Lot No. 1. By their warranty deed, dated 17th day of June, 1930, the Webbs conveyed Lot No. 1 to appellee H. F. Banker; that deed contained the following stipulation: "It is expressly understood that this conveyance is made subject to a certain outstanding indebtedness of One Thousand Seven Hundred Fifteen and No/100 ($1,715.00) Dollars."

By their warranty deed, dated 2d day of February, 1931, appellee Banker, joined by his wife, conveyed Lot No. 1 to J. A. and V. V. Willis on the recited consideration of $100 in cash, which was in fact paid, and a promissory note for $1,900, executed by J. A. and V. V. Willis, payable to appellee in monthly installments of $25 beginning the 2d day of March, 1931, secured by the vendor's lien retained both in the note and in the deed, against Lot No. 1; that deed contained the following express promise and agreement by appellee: "It is expressly understood between the parties hereto that there is an outstanding indebtedness against the property hereinabove described, amounting to the sum of $1,370.00 which the grantors herein agree to pay as it matures, upon failure to do so, the grantees herein are given the right to pay same, and payments so made shall apply on the note herein given as part of the consideration."

J. A. and V. V. Willis defaulted in the payments on their note to appellee; on the 13th day of January, 1933, with the consent of appellee and acting under his directions, they conveyed by their deed in writing Lot No. 1 to Bruce Badger of Kansas, and in adjusting "back interest" on appellee's note for $1,900, they paid him in cash an additional sum at that time of about $145. After the execution by them of the deed to Badger, appellees surrendered to them their $1,900 note. The indebtedness referred to by appellee in his deed to the Willises as "an outstanding indebtedness against the property herein above described, amounting to the sum of $1370.00" was the unpaid balance of the note executed by the Webbs to appellant on the 17th day of December, 1924, as part consideration for the deed whereby appellant conveyed them Lot No. 1 as stated above. Though appellee did not assume the payment of that note in accepting the deed to Lot No. 1 from the Webbs, he paid the monthly installments provided for in the face of the note after he acquired his deed from the Webbs until he executed and delivered his deed to J. A. and V. V. Willis; after that date he made two payments on appellant's Webb note, one for $20 and one for about $18. Appellant knew of the execution of the deed by the Webbs to appellee, and that appellee was regularly

paying the monthly installments on the Webb note, and looked to appellee to pay that note. Appellant did not know of appellee's deed to J. A. and V. V. Willis until a short time before this suit was filed, and so, of course, did not know until that time of appellee's promise in his deed to J. A. and V. V. Willis to pay the balance due on the Webb note; with actual knowledge of that deed and of appellee's promise, appellant filed this suit praying for judgment against Bruce Badger for foreclosure of the vendor's lien against Lot No. 1 as originally retained in his deed to the Webbs of date December 17, 1924, and for personal judgment against appellee for the balance due on the Webb note. For cause of action against appellee, appellant plead in haec verba his deed to J. A. and V. V. Willis, and that, as a part of the consideration for said deed, appellee agreed to pay the Webb note; in relation to that deed he alleged further that "the sum of Two Thousand Dollars ($2,000.00) was the total consideration in said deed for the conveyance of such property and that the said J. A. Willis and V. V. Willis paid One Hundred Dollars ($100.00) in cash and executed their note for the balance of Nineteen Hundred and No/100 ($1900.00) Dollars; that the said H. F. Banker as part of the consideration therefor agreed to pay all mortgages and liens then existing against such property, and especially the note and lien owned by this plaintiff, in consideration of the payment to him of the total consideration by said grantees, J. A. Willis and V. V. Willis, amounting to Two Thousand and No/100 ($2,000.00) Dollars, which was the sales price of said lands, and that the defendant, H. F. Banker, thereby became liable and bound to pay the note owned and held by this plaintiff."

On trial to a jury, judgment was entered in appellant's favor on an instructed verdict against Bruce Badger foreclosing the vendor's lien as prayed for, and in favor of appellee that he go hence without day and recover his costs of and from appellant; all costs were taxed against appellant, since Bruce Badger, a nonresident, was not personally served with citation and did not make his personal appearance in the case. From that judgment appellant has duly prosecuted his appeal to this court.

## Opinion.

On the pleadings and all the evidence, appellant should have been awarded judgment against appellee for the unpaid balance of the Webb note, the note sued upon by appellant and described in his petition.

It is the settled law of this state that a third party may enforce a contract made upon a valuable consideration by other parties for his benefit; a formal acceptance by him of such contract is not necessary; a suit on the contract evidences his acceptance. Aetna Life Ins. Co. v. Texarkana National Bank (Tex.Civ.App.) 60 S.W.(2d) 251; Key v. Alamo Nat. Co. (Tex.Civ.App.) 62 S.W.(2d) 1002. It is also the law of this state that the promisor in such a contract cannot withdraw from the contract and release himself from the obligations of his promise, when once accepted by the third party, without the consent of the third party. Hill v. Hoeldtke, 104 Tex. 594, 142 S.W. 871, 40 L.R.A.(N.S.) 672. It is also the law that the liability of the promisor is contractual in its nature, based upon the well-settled principle that "where one person for a valuable consideration makes a promise to the person from whom the consideration moves for the benefit of a third person, such third person may maintain an action thereon. 3 Pomeroy, Eq.Jur. § 1207." Allen v. Traylor (Tex.Com.App.) 212 S.W. 945, 946. The facts in the Allen Case were as follows: The Rockport Land Company and Harry Traylor conveyed to McKey and Pridgen certain lands, and in payment therefor the purchasers executed and delivered their vendor's lien notes payable to the order of the land company. The company transferred the notes to Traylor. McKey and Pridgen conveyed the land to M. Ucovich, subject to the vendor's lien. Thereafter Ucovich conveyed part of the land to Frank Allen, who, as a part of the consideration therefor, assumed the payment of a certain part of the vendor's lien indebtedness against the land. Traylor brought suit against Allen and McKey and Pridgen, to recover a balance due on the notes. Allen's immediate vendor, Ucovich, who purchased the property subject to, but not assuming the payment of, the vendor's lien, was not made a party to the suit. Under the facts stated, holding Allen liable on his promise to Ucovich to pay a certain part of the vendor's lien indebtedness against the land, Judge Sonfield said:

"Upon a careful consideration of the authorities, we are inclined to the view that the liability under a contract, for the

benefit of a third person, a stranger thereto, and the right of such third person to enforce the contract, should not be limited by the requirement that there be some obligation or duty owing from the promisee to such third person. The right 'does not rest upon the ground of any actual or supposed relationship between the parties, as some of the earlier cases seem to indicate, * * * but upon the broader, and more satisfactory basis that the law, operating upon the acts of the parties, creates the duty, establishes the privity, and implies the promise and obligation on which the action is founded.' Brewer v. Dyer, 7 Cush.(Mass.) 337; Dean v. Walker, 107 Ill. 540, 47 Am.Rep. 467.

"Allen and his vendor contracted for the purchase and sale of the land and the consideration to be paid therefor. It is wholly immaterial, as far as Allen is concerned, to whom the purchase money or any part thereof was to be paid, and, if to some third person, whether his vendor was under any legal obligation to such third person. If his vendor directed the payment of part of the purchase price to one to whom he was under no obligation, the same being intended as a mere gratuity, Allen has no ground for complaint; such agreement being upon a valuable consideration. The lien debt assumed by Allen was a part and parcel of the consideration for the purchase of the land. The amount so assumed constitutes in legal effect a debt due by Allen which he agreed to pay to the holder of the notes instead of to his vendor, from whom the consideration for the promise moved. Spann v. Cochran & Ewing [63 Tex. 240], supra.

"The assumption clause cannot be construed as a mere indemnity to the grantor. There was no personal liability on the part of the grantor; hence no liability against which to indemnify him. Such clause, standing alone, without more, evidences a promise for the benefit of the holder of the notes. The promise was upon a sufficient consideration, and no good reason is perceived for denying to Traylor the right to enforce performance thereof."

Under the theory of contract as evolved from the facts of the Allen Case and the other principles of law stated above, we are forced to the conclusion that appellee was liable to appellant on his promise in his deed to J. A. and V. V. Willis to pay the balance due on the Webb note. Appellee's promise was on a valuable consideration and was for appellant's benefit. That appellee was not liable personally to pay the Webb note, prior to his promise to the Willises, is immaterial on the legal point involved. That note was a prior lien against Lot No. 1, which appellee or his grantees were bound to pay in order to protect the title in the grantees, and, also, to protect appellee's vendor's lien reserved in his deed to his grantees. Appellee's promise, constituting a valid contract enforceable at law, was for the benefit of appellant, a third party, and, to quote Judge Sonfield's conclusion in the Allen Case, supra, "such third person may maintain an action thereon."

In support of his judgment, appellee advances the following counter propositions:

■ First: Appellee insists that appellant's pleadings were defective in that he did not plead that appellee's promise, the basis of this suit, was made for his benefit; and, further, that he did not plead performance by the Willises of the conditions of the promise. These contentions are overruled. Appellant did not plead in words that appellee's promise was made for his "benefit"; he pleaded the facts upon which he relied to establish liability against appellee, and that by reason of these facts appellee became "liable, bound and obligated to pay said note according to its tenor, effect and reading," and that appellee by reason of these facts "became liable and bound to pay the note owned and held by this plaintiff." The general intendments of these allegations were that the contract sued upon was made for appellant's benefit, within the rule announced in House v. Houston Waterworks Co., 88 Tex. 233, 31 S.W. 179, 28 L.R.A. 532; Southwestern Graphite Co. v. Burnet National Bank (Tex.Civ.App.) 255 S.W. 676; American Loan & Mortgage Co. et al. v. American Nat. Bank of Houston (Tex.Civ. App.) 205 S. W. 146.

■ We also overrule the contention that the facts pleaded by appellant, as detailed above, did not make out a case of "performance" by the Willises. In that respect the petition was not subject to the general demurrer.

■ Second: Appellee insists that his promise "reflected upon its face" that he "might or might not" at his "option or election" pay said sum of $1,370 and, therefore, appellant "was properly denied recovery." Appellee has not correctly con-

strued his promise. His promise was absolute. He did not have the right, at his "option or election," to pay the sum of $1,370. His grantees had the right, by an action in court, to enforce appellee's obligation, the right given the grantees in the event appellee defaulted in his promise to pay the Webb note was merely an alternative remedy.

■ Third: That appellant must accept the contract as made and must succeed or fail upon its provisions is a correct legal proposition fully sustained by the following authorities: Western Union Tel. Co. v. Douglass, 104 Tex. 66, 133 S.W. 877; American Loan & Mortgage Co. v. American Nat. Bank (Tex.Civ.App.) 205 S.W. 146; American Law Institute, Restatement of the Law of Contracts, p. 165, § 140. That a third party beneficiary can acquire no better right to enforce the contract than that held by the contracting parties themselves is also a sound legal proposition, fully sustained by 10 Tex.Jur. 485; Norton v. W. L. Macatee & Sons (Tex. Com.App.) 16 S.W.(2d) 517; Dickson v. Day (Tex.Civ.App.) 275 S.W. 307; Hill v. Hoeldtke, 54 Tex.Civ.App. 201, 117 S.W. 217; Hoeldtke v. Horstman, 61 Tex.Civ. App. 148, 128 S.W. 642; affirmed Hill v. Hoeldtke, 104 Tex. 594, 142 S.W. 871, 40 L.R.A.(N.S.) 672. Appellant's cause of action was in due recognition of the controlling effect of these propositions; he claimed only the express obligation of appellee's promise to pay the balance due on the Webb note.

■ Fourth: There is no merit in the counter proposition that the consideration for appellee's promise to J. A. and V. V. Willis failed; that the Willises "did not perform" the obligation assumed by them as a consideration for appellee's promise. For appellee's promise the Willises paid him $100 in cash on the day they received their deed from him to Lot No. 1, and, in adjusting "back interest" on their note for $1,900, given as part of the consideration for their deed, they paid him an additional sum in cash of about $145; at his request, the Willises executed a deed prepared by appellee himself conveying Lot No 1 to Bruce Badger, on terms satisfactory to appellee; after the execution of that deed, appellee surrendered to the Willises their note. These facts constitute a substantial performance by the Willises of the obligation assumed by them in consideration for appellee's promise to

assume and pay the Webb note; at least, these facts defeat a claim of "failure of consideration," for, on all the facts, appellee received a very substantial consideration for his promise, to the extent that he surrendered to the Willises their note in the sum of $1,900.

■ Fifth: We overrule the proposition that appellee's contract with the Willises was rescinded before it was accepted by appellant, and that the Willises never performed their contract with him. If appellee and the Willises rescinded their contract before appellant accepted its benefits by filing this suit, then appellant had no cause of action. The law on this point was thus stated by Judge Hildebrand in his discussion of Third Party Contracts in Texas, 9th Texas Law Review, 129: "* * * before acceptance on the part of the beneficiary a release or rescission destroys the power of the beneficiary to create, by 'acceptance', an obligation on the part of the promisor in favor of the beneficiary. * * *"

In support of his conclusion Judge Hildebrand cited Hill v. Hoeldtke, 104 Tex. 594, 142 S.W. 871, 40 L.R.A.(N.S.) 672, and Edwards v. Beals (Tex.Com.App.) 271 S.W. 887. But it is our construction of the facts of this case that there was no rescission of the contract between appellee and the Willises; on the contrary, that the contract was in full force and effect in its ultimate effect when this case was tried. The Willises did not deed the land back to appellee, as was done in the Beals Case, supra, but at his request they conveyed the land to Bruce Badger by general warranty deed. Appellee received from them not only the cash consideration stated in the original opinion, but, by the deed he himself prepared for them to execute to Bruce Badger, he bound them by their general warranty to protect Badger against the very note he had obligated himself to pay by his express contract. Certainly, it cannot be said that the sale by the Willises to Bruce Badger was a rescission of the contract between them and appellee, when he caused the title to be invested in Bruce Badger, protected by their general warranty. To constitute a rescission between appellee and the Willises it was required that the title be reinvested in appellee, and that the Willises be relieved of all liability by reason of their original purchase and deed. True, appellee testified that he surrendered to

them their note for $1,900, but the evidence does not show when that was done, nor the details of the contract resulting in its surrender. The payment of the specific sums of money enumerated in the original opinion, the execution of their general warranty to Bruce Badger, the surrender by appellee of the $1,900 note to the Willises—these facts constituted a substantial performance by the Willises of their original contract with appellee, within the rule stated above by R.C.L. p. 861: "Where the acts or covenants of the parties are concurrent, and to be done and performed at the same time, the covenants are dependent, and neither party can maintain an action against the other without averring and proving performance on his part."

At page 886 of the same volume of R.C. L.: "The right of a third party to recover is subject to the equities between the original parties, and the right to recover from the promisor is not absolute in all cases. The beneficiary is in fact asserting a derivative right. Therefore, among other limitations, the party to be benefited takes subject to all inherent equities arising out of the contract, as affecting the principal parties."

Sixth: There is no merit in the contention that appellee's promise to the Willises was without consideration. When appellee executed his deed conveying Lot No. 1 to the Willises appellant had a vendor's lien against that property for $1,370. Appellee did not convey the property subject to that indebtedness, but took from his grantees a cash payment of $100 and a vendor's lien note for $1,900. In other words, he had his grantees pay and promise to pay him the entire purchase price as if Lot No. 1 were free of lien, and, in consideration of that promise, made with his grantees the contract in issue—that he would pay the outstanding indebtedness.

■ Seventh: Appellee strenuously insists that his promise to the Willises was not for appellant's benefit. To have the benefit of the contract made by appellee with the Willises appellant must bring himself within the following proposition stated by 10 Texas Jurisprudence, p. 483: "To entitle a third person to sue on a contract it must have been made for his benefit as its object, and he must be the party intended to be benefited."

This rule was thus stated by our Supreme Court in House v. Houston Waterworks Co., 88 Tex. 233, 31 S.W. 179, 180, 28 L.R.A. 532: "It is true that plaintiff in error might have received benefit from the performance of the contract by the defendant, but 'it is not every promise made from one to another, from the performance of which a benefit may inure to a third, which will give a right of action to such third person, he being neither privy to the contract nor to the consideration. The contract must be made for his benefit as its object, and he must be the party intended to be benefited. Simson v. Brown, 68 N.Y. 355; Burton v. Larkin, 36 Kan. [246] 249, 13 P. 398 [59 Am.Rep. 541]; Wright v. Terry, 23 Fla. [160] 169, 2 So. 6."

■ Under the facts detailed above, must it be said that appellee's promise to pay appellant's note "was made for his benefit as its object," and that he was "the party intended to be benefitted"? The following proposition by Professor Corbin, quoted by Judge Hildebrand in his article cited above, which has support in Southwestern Graphite Co. v. Burnet Nat. Bank (Tex.Civ.App.) 255 S.W. 676, is in point on the answer to this question: "The promisor has undertaken for a sufficient consideration to perform an act that will be beneficial to the third party. If such benefit was the contemplated result, and if judgment and execution in favor of the third party will give effect to the intention of the promisor and of the party giving the consideration, there is ample justification for sustaining action by the beneficiary * *. It is believed that where the promisor has received consideration for a promise the fulfillment of which necessarily requires him to pay money directly to a mortgagee or other third person, it would seem not unreasonable to draw an invariable inference that such third person was contemplated as a beneficiary and as the holder of a new and additional right of action."

■ The undisputed facts of this case meet every condition of Professor Corbin's proposition—appellee received a valuable consideration for his promise to pay appellant's note, and the fulfillment of that promise required him to pay the amount of the note directly to appellant; therefore, we are compelled by law to draw the "invariable inference" that appellant "was contemplated" as the beneficiary of appellee's promise.

As absolutely controlling, appellee cites us to the following testimony given by J. A. Willis, one of his grantors:

"Q. You weren't acquainted with Mr. E. H. Breaux at the time of the deed from Mr. Banker to you were you? A. No sir.

"Q. There was no intent, was there, on your part to make any kind of a gift to Mr. Breaux was there? A. No, sir.

"Q. Or to confer upon him any kind of a benefit? That wasn't in your mind, was it? A. No, sir."

Quoting again from Professor Corbin, brought forward by Judge Hildebrand as a footnote in his article cited above, page 165: "If there is doubt that such a promise was in fact made, it may be of some assistance to probe into the heart and history of the promise. * * * But the third party's right is not dependent upon the promisee's motives. The question is, was payment to him the factual result agreed upon; was it the promised performance? If it was, judgment in favor of the third party is a proper method of reaching that result."

So, on that authority, it must be said that the contract between appellee and the Willises, whereby he promised to pay appellant's note, must be construed by the language of the contract and the effect of its execution, and that Mr. Willis' testimony that he had no intention to make a gift to appellant was without probative force.

Eighth: On the ground that he did not name him in his promise, appellee asserts that appellant "could not maintain this suit or recover against him," for the reason that "in Texas only those whose names appear on an instrument, which at common law required a seal for its validity, can sue or be sued," citing Sanger v. Warren, 91 Tex. 472, 44 S.W. 477, 66 Am.St.Rep. 913; Liberto v. Sanders (Tex.Com.App.) 259 S.W. 1080. These authorities are not in point; appellant's cause of action was not on the deed as a conveyance of title, but on appellee's promise as a part of the consideration for the deed. That appellant had the right to maintain this suit is illustrated by the facts in Brannin v. Richardson, 108 Tex. 112, 185 S.W. 562, where the promise was merely to assume payment of the outstanding vendor's lien note. The following proposition by 10 Tex.Jur. 484, discussing the rights of the beneficiary in a third party contract, also sustains the conclusion that appellant could maintain this suit: "It is not necessary that he be named in the contract, however, nor even that the particular person to be benefited be known when the contract was made; it is sufficient if a third person be in some measure pointed out and designated as the one intended."

Ninth: We overrule appellee's contention that appellant was only "an incidental beneficiary" of appellee's promise. In construing third party contracts, if the beneficiary is neither a "donee beneficiary" nor a "creditor beneficiary" then he is an "incidental beneficiary." Restatement of the Law of Contracts, American Law Institute, c. 6, § 133. If the terminology "donee beneficiary" and "creditor beneficiary" and "incidental beneficiary" are to be incorporated into our jurisprudence—at the time Judge Hildebrand wrote his article cited supra these terms had not been defined—we are clearly of the opinion that appellant was a "donee beneficiary," as that term is thus defined by Professor Corbin, cited at page 162 in Judge Hildebrand's article: "Third parties are classified as donee beneficiaries and creditor beneficiaries. If the performance promised by the defendant will, when rendered, come to the third person as a pure donation, he is a donee beneficiary. If, on the other hand, that performance will come to him in satisfaction of a legal duty owed to him by the promisee, he is a creditor beneficiary".

As a "donee beneficiary" appellant was entitled to the benefit of appellee's promise.

Tenth: As one of the grounds of distinction between this case and Allen v. Traylor, cited above as controlling the disposition of this case, appellee points out that in the Allen Case the promise to pay the outstanding vendor's lien note was by a remote grantee and that the promise was a part of the consideration for his deed, while in the case at bar the promise was by appellee, the grantor, who was under no contractual obligation to pay the note. This distinction is without legal effect. In the Allen Case it was to the interest of the remote grantee that the outstanding note be paid—necessary that it be paid in order to protect his title. In the case at bar it was to the interest of appellee that appellant's note be paid—necessary that it be paid in order to protect his

warranty and his $1,900 note against the Willises. Appellee's liability to appellant was contractual in its nature, upon a valuable consideration moving to him from the Willises. Therefore, under well-recognized principles of law, appellant had the legal right to maintain this action.

It follows that the judgment of the lower court in favor of appellee Banker must be reversed and judgment here rendered in favor of appellant E. H. Breaux against him for the balance due on the Webb note, and that he be taxed with all costs of this proceeding, except the costs incurred by appellant in foreclosing his lien against Bruce Badger.

Reversed, and rendered.

## On Rehearing.

COMBS, Justice (dissenting).

The writer has reached the conclusion that our judgment reversing and rendering this case was error, and that appellees' motion for rehearing should be granted.

I do not disagree in any material respect with the legal propositions announced in the opinion of Mr. Chief Justice WALKER, but only with their application to the facts of this case.

As I construe the facts, Banker's contract with the Willises to pay the Breaux obligation was terminated by Banker and the Willises two years or more before Breaux even heard that such a contract had been made. If Banker's obligation to the Willises had terminated at the time Breaux elected to claim the rights of a third party beneficiary under it, which was by the filing of this suit, then, under all of the authorities, Breaux could assert no cause of action under it. For there was then no obligation of Banker which he could claim the benefit of. Reduced to simple terms, the original agreement between Banker and the Willises was that the Willises would pay the entire purchase price of the property involved to Banker, Banker in turn agreeing to pay off and discharge the Breaux debt against the property. The Willises were unable to carry out their part of the contract and upon their payment of a small amount to cover accrued interest and the conveyance of the property to a purchaser of Banker's selection, Badger, the Willis notes, amounting to $1,900, were returned to the Willises and, of course, their obligation to pay them

was extinguished. As I view it, Banker's promise to the Willises to pay Breaux was likewise extinguished, for both obligations were part and parcel of one agreement. Each promise was dependent upon the other. The Willises being released by Banker from their promise to him, how can it be said that Banker was not released from his promise to them?

The fact that the Willises are bound to Badger on their warranty of title cannot affect the matter. That obligation arose not out of the original contract but was a new undertaking assumed by the Willises when they conveyed to Badger. Banker also is obligated to the Willises on a warranty because he warranted the title in his conveyance to the Willises and both are liable on their warranties to Badger. But as I view it, such obligations have no relation to the third party beneficiary contract originally made wherein Banker promised to pay the Breaux debt. The two obligations were entirely separate and distinct. Breaux was in no way concerned with the warranty obligations and he can predicate no rights upon them.

For the reasons given above, it is the writer's conclusion that the judgment of the trial court denying Breaux recovery against Banker should be affirmed.

But if the conclusion that the facts, as developed, fully established that the Banker-Willis contract was terminated by the transaction mentioned be incorrect, still it is the writer's view that the case should not be rendered but should be remanded for a new trial. The law of third party beneficiary contracts, as it exists in Texas, is not generally well understood. In fact, this court has had considerable trouble in trying to ferret out the law of this case. The writer believes it evident from the record that, with the law of his case established, the appellee Banker can probably produce additional evidence on a subsequent trial to strengthen his case. He won his judgment in the trial court on the former trial, and it seems to the writer that, in any event, this case should not be rendered but remanded in order that he may have opportunity to further develop it.

For the reasons above stated the writer dissents from the action of the majority in overruling the appellee's motion for rehearing.