**HALL et al. v. CONINE et al.  (No. 2396.)**

(Court of Civil Appeals of Texas. Texarkana. March 24, 1921.)

1. **Vendor and purchaser** ⊘⟹265(3), 267—**Purchaser assuming lien becomes primarily liable; purchase of vendor's lien notes by principal obligor or any one for his benefit constitutes payment of debt.**

A purchaser of land assuming the payment of outstanding vendor's lien notes given by prior owners becomes, as between himself and the prior owners, the principal obligor, and they his sureties, and the purchase of the notes by him or any one for his benefit constitutes a payment of the debt and merges the lien in the title.

2. **Assignments for benefit of creditors** ⊘⟹8—**Deed of trust authorizing trustees, after certain time, to sell for benefit of creditors, held mortgage with power of sale.**

A deed of trust authorizing the trustees to take possession of and at the end of 90 days sell the goods and lands conveyed and distribute the proceeds among the grantor's creditors, any surplus to be returned to the grantor, is in legal effect only a mortgage with a power of sale.

3. **Vendor and purchaser** ⊘⟹267—**Payment by trustees of outstanding vendor's lien notes extinguishes lien and releases parties secondarily liable on notes.**

H. purchased certain land, assuming the payment of outstanding vendor's lien notes executed by prior owners. Subsequently he executed to plaintiffs a deed of trust conveying to them said land and a stock of merchandise and authorizing them, after 90 days, to sell both and distribute the proceeds among H.'s creditors, any surplus to be returned to H. Plaintiffs, as trustees, afterwards sold the stock of merchandise, and with the proceeds acquired all of the notes issued by the prior owners. *Held,* the presumption was that plaintiffs, as trustees, took up the notes for the benefit of the trust estate, thus extinguishing the lien and releasing the prior owners from further liability as sureties on the notes.

4. **Fraudulent conveyances** ⊘⟹47—**Deed of trust conveying land not within Bulk Sales Law.**

A deed of trust conveying to the trustees a debtor's stock of merchandise and his interest in certain land did not, as to the land, fall within the requirements of the Bulk Sales Law, as to notice to creditors; that applying only to the sale in bulk of merchandise daily exposed for sale.

5. **Assignments for benefit of creditors** ⊘⟹193—**One creditor not entitled to priority over others under trust deed for benefit of creditors.**

A deed of trust empowering the trustees to sell, for the benefit of certain creditors, the debtor's stock of merchandise and fixtures and his interest in certain land, creates a prior lien in favor of all the creditors mentioned, and one only of them is not, by virtue of a writ of garnishment served on the trustees after they took charge of the debtor's merchandise, and the levy of a writ of attachment on the land, entitled to any preference in the distribution of the proceeds of the sale of the land on foreclosure of a vendor's lien thereon by the trustees.

6. **Fraudulent conveyances** ⊘⟹47—**Conveyance violating Bulk Sales Law voidable only by creditor whose rights ignored.**

Conveyances not made in conformity with Bulk Sales Law, requiring notice to creditors, are not absolute nullities, but void only when attacked by a creditor whose rights have been ignored.

7. **Assignments for benefit of creditors** ⊘⟹193—**One creditor cannot by garnishment avail himself of violation of Bulk Sales Act to gain advantage over other creditors.**

A creditor named in a deed of trust conveying to and authorizing the trustees to sell a debtor's land and stock of merchandise for the benefit of certain creditors, itself included, cannot avail itself of a violation of the Bulk Sales Law to secure an advantage over the other creditors in the distribution of assets, though the trustees, after the service of a writ of garnishment upon them by it, used money resulting from the sale of the debtor's stock of goods to redeem the land from prior incumbrances.

Appeal from District Court, Van Zandt County; Joel R. Bond, Judge.

Action by Vernon Hall and another, trustees of the estate of Eugene E. Harper, against W. E. Conine and others, in which the National Bank of Grand Saline intervened. Judgment for certain of the defendants and in favor of intervener, and plaintiffs appeal. Reversed in part, with directions.

Short & Feild, of Dallas, for appellants.
Natt M. Crawford, of Grand Saline, for appellees.

HODGES, J. The appellants Hall and Morgan, as trustees mentioned in an instrument hereinafter fully described, instituted this suit against W. E. Conine, W. T. Buchanan, L. C. Sturdivant, and Eugene E. Harper. The purpose of the suit was to secure a personal judgment against each one of the defendants on promissory notes theretofore executed and certain assumptions of payment of the purchase price of two tracts of land described in the petition, and also to foreclose the vendor's lien. After the suit had been instituted the National Bank of Grand Saline intervened, alleging that it had a lien on the land, which is more fully stated in the findings of the court which follow. In a trial before the court the following are, in substance, the facts found:

On November 14, 1916, Conine purchased from Mrs. Wilderspin the two tracts of land

---

⊘⟹For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

involved in this suit. As a part of the purchase price he executed a number of vendor's lien notes, three of which were unpaid and are described in the plaintiffs' original petition. On October 17, 1917, Conine conveyed the land to W. T. Buchanan; the latter assuming the payment of the three notes mentioned. On November 23, 1917, Buchanan sold and conveyed the same land to L. C. Sturdivant, who also assumed the payment of the same three notes, and as a further consideration executed four other notes, which are described in plaintiffs' petition. On November 20, 1918, Sturdivant conveyed the land to Harper, who assumed the entire indebtedness outstanding, consisting of the three notes of Conine to Mrs. Wilderspin and the four notes of Sturdivant to W. T. Buchanan. On February 24, 1919, Harper executed and delivered to Hall and Morgan, the appellants, a deed of trust. conveying his entire stock of goods, wares, and merchandise, book accounts, furniture, and fixtures, and, besides other land, all of his right, title, and interest in the two tracts described in the transfers mentioned. The consideration expressed in the deed was an extension of time granted to Harper for the payment of his indebtedness. The trustees were authorized to take possession of the stock of merchandise, and, if they thought proper, continue the business for 90 days. At the expiration of that time they were to sell both the goods and the land and make a distribution of the proceeds among a list of 17 creditors named. Sixteen of those creditors were put in class A and were to be first paid. The bank alone was placed in class B. It was also provided that, if the funds realized from the sale of the property were not sufficient to pay the entire amount of the indebtedness, each creditor was to share pro rata according to the size of his claim, but that, if any surplus remained, it was to be returned to Harper. No notice was given to the creditors generally as is required by article 3971 of the Revised Civil Statutes when the merchandise is to be sold in bulk. On March 2, 1919, and in another suit which had been filed against Harper, the bank caused a writ of attachment to be issued and levied on the two tracts of land above mentioned. A few days later it secured a writ of garnishment, which was served upon the appellants after they took charge of the merchandise. In that suit the bank secured a judgment against Harper for $1,339.42 and an order foreclosing its attachment lien on the land. The judgment, however, had not been executed at the time of the trial of this case. After the service of the two writs above mentioned the appellants as trustees sold the stock of merchandise, and with the proceeds acquired all of the purchase-money notes executed by Conine and Sturdivant, the payment of which had been assumed by Harper. On March 20, 1920, before settlement was made with the creditors, this suit was filed. The petition alleged a history of the various relevant transactions, including the appointment of the appellants as trustees and the powers conferred. They claimed in their petition to be acting solely in their capacity as trustees. They alleged that after making proper deductions for credits to which he was entitled, Harper still owed the creditors listed by him the sum of $2,000. They asked judgment for that amount against him, and for a foreclosure of the vendor's lien on the land. They also sought personal judgments against the other defendants. On April 22, 1920, the bank filed its plea of intervention, alleging that the deed of trust was void because of the failure of the parties to comply with the Bulk Sales Law, and claiming a prior lien upon the funds in the hands of the trustees by virtue of the writ of garnishment, and a prior lien upon the land by reason of the levy of its writ of attachment. All of the defendants except Harper answered, denying any personal liability to the trustees on the notes. Harper filed no answer and made no appearance. Judgment was rendered against him for the full amount sued for and the foreclosure of the vendor's lien upon the land. Judgment was also rendered in favor of the intervener bank for the amount of its claim, and an order entered directing that from the proceeds of the sale of the land the bank's claim be first paid in full, and the remainder distributed among the creditors in proportion to their respective claims. Judgment was rendered that the trustees take nothing by their suit against Conine, Buchanan, and Sturdivant.

[1-3] The first question presented is: Did the court correctly hold that Conine, Buchanan, and Sturdivant were not personally liable upon the notes sued on and which Harper had promised to pay as the consideration for the purchase of the land? When Harper bought this land and assumed the payment of those notes, he became, as between him and the other defendants, the principal obligor, and they became his sureties. Hill v. Hoeldtke, 104 Tex. 594, 142 S. W. 871, 40 L. R. A. (N. S.) 672. Neither Harper nor any one acting for him could by any form of contract with the holders of those notes acquire them as an assignee. Their purchase by him or any one for his benefit would be treated as a payment of the debt, and the lien theretofore existing would be merged in the title. Jones on Mortgages, §§ 864, 865. There are instances where the owner of an equity in land may acquire by assignment a prior vendor's lien and assert it against an intervening claimant, but that the rule does not apply where such owner has assumed the payment of the debt and lien he satisfies. The contention here is, however, that the trustees in purchasing the notes represented

the creditors of Harper, and not Harper himself, and for that reason they occupied the position of a third party in taking up the notes. The deed creating this trust was in legal effect only a mortgage with a power of sale. Title v. Vanleer, 89 Tex. 174, 192, 29 S. W. 1065, 34 S. W. 715, 37 L. R. A. 337. Its own terms described it as a mortgage given for the purpose of securing the payment of certain debts. Harper might have reclaimed all of the property conveyed to the trustees at any time before sale by satisfying those creditors. All the power vested in the trustees to deal with the property was derived from Harper. They were handling his assets, upon which his creditors had only a lien. It was the duty of the trustees to manage those assets for the best interest of Harper, as well as for the benefit of the creditors. They were not authorized by the deed to use any part of the money realized from the sale of those assets as investments in commercial paper. Viewing their conduct as in the line of duty, the presumption is that they took up those notes for the benefit of the trust estate and in the performance of the service due to Harper. He owned only an equity in the land. The payment of his purchase-money obligations extinguished the lien and correspondingly enlarged the value of his estate. It converted his equity of redemption into a fee-simple title. Both Harper and his creditors received the benefit of that enlargement. Harper could not by his deed empower his trustees to do for the benefit of his estate what he himself could not have done. By making him a party to this suit, the trustees did not change their attitude towards the trust fund or make themselves any the less the agents for Harper's estate. Had Conine, Buchanan, and Sturdivant paid those notes, they would have become creditors of Harper, and entitled to reimbursement from his estate. The appellants, as trustees, could not make them debtors by doing what Harper should have done. We think the court committed no error in refusing to render a personal judgment against those defendants.

[4] The next question is: Was the bank as an attaching creditor entitled to priority in the payment of its claim? That portion of the judgment is justified by counsel for the bank upon the ground that the deed of trust was void because executed without first complying with the Bulk Sales Law. That statute applies only to the sale in bulk of merchandise daily exposed for sale. Clark-Boice Lbr. Co. v. Commercial National Bank, 200 S. W. 197. The property here involved is land, and the deed of trust, in so far as it affects the land, does not fall within the requirements of article 3971, the Bulk Sales Law. The validity of the deed of trust is not attacked upon any other ground.

[5-7] If it was a valid incumbrance on the land, it created a prior lien in favor of the creditors it mentioned. The bank was not, therefore, entitled to any preference in the distribution of the proceeds that may be realized from the sale under the order of foreclosure. The fact that money resulting from the sale of the stock of goods after the service of the bank's writ of garnishment upon the trustees was used in redeeming the land from a prior incumbrance does not make the situation legally different. Conveyances which are not made in conformity with article 3971 are not absolute nullities, but are treated as void only when attacked by a creditor whose rights have been ignored. The purpose of that statute is to protect creditors against injurious discriminations by debtors. The right to defeat a conveyance made in violation of the statute, by means of a writ of garnishment or in any other manner, is not given to enable the attacking creditor to secure an advantage in the distribution of assets. He cannot convert a defensive remedy into an offensive weapon. The grantee, whether he be a creditor or a trustee, is to be treated as holding for the benefit of all the creditors and upon the same conditions. The most that the bank may here claim is the right to share upon equal terms with the other creditors. That portion of the judgment will therefore be reversed, and judgment here rendered directing that when the land is sold the net proceeds remaining shall be divided among the creditors in proportion to the amount of their respective claims.

The judgment against Harper, not having been appealed from, will remain undisturbed.

It is further ordered that one half the cost of this appeal be taxed against the intervener bank, and the other half against the appellants.