### ROWE et al. v. MASSEY et al.
### No. 11067.

Court of Civil Appeals of Texas. Dallas.
Oct. 29, 1932.

Rehearing Denied Dec. 10, 1932.

Ross Huffmaster, of Kaufman, and Angus G. Wynne, of Longview, for appellants.

W. H. Barnes and Thos. R. Bond, both of Terrell, and Seay, Seay, Malone & Lipscomb, of Dallas, for appellees.

JONES, C. J.

Mrs. Sadie W. Lochhead, joined pro forma by her husband, Earl Lochhead, appellees, instituted this suit in the district court of Kaufman county against W. M. Massey, E. N. Boykin, O. F. Walton, and the O. F. Walton Lumber Company, a dissolved corporation, Herbert Corley, A. S. Waggoner, the American Investment Company, John S. Turner, R. J. Rowe, and W. R. Holton, to recover on two vendor lien notes, each for the principal sum of $987.50, together with interest at the rate of 8 per cent. per annum, 10 per cent. attorney's fee, and to foreclose the vendor's lien on 283 acres of land described in appellees' petition. Rowe and Holton, appellants, have duly perfected an appeal from a judgment adverse to them. Judgment was also rendered against a number of the other defendants, but they have perfected no appeal. The issues on this appeal are between the Lochheads and Rowe and Holton, and also between Rowe and Holton and Walton, who was awarded a judgment against appellants for the same recovery had by appellees against him. The following are the material facts:

On January 31, 1919, A. S. Waggoner, as owner, sold the 283 acres of land to W. M. Massey, and, as a part of the consideration, Massey assumed to pay an $11,000 lien indebtedness then existing against the land in favor of the John Hancock Mutual Life Insurance Company, and also executed in favor of Waggoner, as payee, the two vendor lien notes, forming the basis of this suit. One of these notes, by its terms, matured January 1, 1927, and the other January 1, 1928. A. S. Waggoner, as payee and owner of the first of these notes, with his written indorsement thereon, sold and delivered same to O. F. Walton, who had succeeded to the business of the O. F. Walton Lumber Company, a dissolved corporation. Walton sold and transferred this note to John S. Turner, with Walton's written indorsement thereon. John S. Turner, with his written indorsement thereon, sold and transferred the note and lien to H. C. Kreiling, the former deceased husband of appellee Mrs. Lochhead. In this transaction, Kreiling was acting as agent for his wife, now Mrs. Lochhead, and the note and lien were purchased with her own separate means.

The second note in suit was transferred with his indorsement, without recourse, by A. S. Waggoner to F. H. Muckleroy, who, by indorsement without recourse, transferred same to Kreiling, purchasing it as agent for his wife and with her separate means. After the death of Kreiling, and prior to the institution of this suit, on September 24, 1930, Mrs. Kreiling and Earl Lochhead were duly married. The indorsers of note No. 1 were made parties defendant on their indorsements of such note.

On October 20, 1919, by warranty deed, W. M. Massey duly conveyed the 283 acres of land to appellants, Rowe and Holton. As a part of the consideration of this conveyance, it was duly recited in the deed that appellants assumed payment of the $11,000 lien indebtedness in favor of the John Hancock Mutual Life Insurance Company, and also assumed payment of the two notes in suit. On the recited date of October 13, 1919, Rowe and Holton, joined by their respective wives, conveyed this land to G. M. Couch, and as a part of the consideration of this conveyance, Couch assumed the said $11,000 indebtedness, and also the payment of the two notes in suit.

On January 4, 1921, G. M. Couch, joined by his wife, reconveyed this land to Rowe and Holton, in consideration of the cancellation and surrender to Couch of certain additional notes that had been executed by him to appellants on his purchase of the land on October 13, 1919, and the conveyance was made subject to all of the other indebtedness existing against the land.

On October 27, 1922, appellants, joined by their respective wives, conveyed the land to E.

N. Boykin, subject to the lien indebtedness in favor of the John Hancock Mutual Life Insurance Company, and subject to the lien indebtedness evidenced by the two notes in suit, and subject to other indebtedness that had been created subsequent to the Massey purchase of the land. Other consideration, not necessary herein to mention, was named in this deed.

E. N. Boykin, on December 18, 1923, executed a deed of trust to M. A. Taylor, trustee for the Chicago Joint-Stock Land Bank, to secure a loan of $13,000 extended by such bank to Boykin, which indebtedness was represented by a series of notes executed by Boykin and made payable annually from 1932 to 1957.

The two notes in suit were made secondary to this deed of trust lien for $13,000, by a subordination agreement entered into by appellees. The $13,000 was a loan to Boykin to pay off and discharge the indebtedness to the John Hancock Mutual Life Insurance Company, in the principal sum of $11,000. Appellants were not parties to the subordination agreement of the lien securing the two notes in suit, nor did they have actual knowledge of such subordination agreement, though it was placed of record.

Appellees agreed with the original payee and subsequent indorsers of the notes in suit to the extension of the time of maturity of each for a period of one year from the date named in the notes as maturity. Appellants were not parties to this extension and knew nothing of same until the suit was filed. Limitation had not run on either of the notes, under the original terms of maturity, when this suit was filed. The land had depreciated in market value from the time the two notes in suit were executed until the date of the trial, and at such latter date was not worth more than $13,000.

The case was tried to the court, without a jury, and judgment was rendered in favor of appellees against W. M. Massey, A. S. Waggoner, O. F. Walton individually, and O. F. Walton Lumber Company, a dissolved corporation, John S. Turner, R. J. Rowe, and R. W. Holton, jointly and severally, for the principal, interest, and attorney fees, on the first note, with interest, except as to the attorney fee, at the rate of 8 per cent. per annum from date of the judgment. Judgment was also rendered against W. M. Massey, A. S. Waggoner, R. J. Rowe, and R. W. Holton, jointly and severally, for the principal, interest, and attorney fee on the second note, with interest, except on the attorney fee, at the rate of 8 per cent. per annum from date. The attorney's fee recovered on each note bears interest from date of judgment at the rate of 6 per cent. per annum. The vendor's lien in favor of appellees, as it existed on January 31, 1919, was foreclosed on the said 283 acres. Judgment for the same amount as that recovered by appellees on the first note was rendered in favor of John S. Turner, against O. F. Walton individually, and the O. F. Walton Lumber Company, a dissolved corporation, A. S. Waggoner, W. M. Massey, R. J. Rowe, and R. W. Holton. Judgment in a like amount on the first note was rendered in favor of O. F. Walton, against W. M. Massey, A. S. Waggoner, R. J. Rowe, and R. W. Holton. R. J. Rowe and R. W. Holton alone excepted to the judgment and perfected an appeal to this court.

As we understand the position of appellants, as reflected by their brief and assignments of error, no question is made as to the right of those codefendants awarded a judgment against them, provided the judgment in favor of appellees was correctly awarded against appellants.

Before discussing the contentions made by appellants, in respect to the judgment rendered against them, we deem it best to state the status of the parties interested in this appeal, under the facts as herein given. At the time the obligation entered into by appellants was incurred, Massey was the owner by purchase from Waggoner of the land described in appellees' petition, and as part consideration for the conveyance to him had executed in favor of Waggoner the two notes in suit, and had made such notes a vendor's lien on the land. At the time of this purchase, there already existed a valid lien on the land for the principal sum of $11,000 in favor of John Hancock Mutual Life Insurance Company, and as a further part of the consideration, Massey assumed the payment of this indebtedness. This lien for $11,000 was an older and necessarily a superior lien to the lien created by Massey to secure the payment of the two notes in suit. With these outstanding and existing liens against the land, appellants accepted a deed from Massey, conveying to them the land, in which a part of the consideration was the assumption of the payment of the first and superior lien for the principal sum of $11,000, and the second and inferior lien for the principal sum of $1,975, represented by the two notes in suit, each for the principal sum of $987.50. Appellants therefore became the owners of the land charged with the payment of the indebtedness due the John Hancock Mutual Life Insurance Company, and the indebtedness represented by the two notes due to Waggoner, with their personal obligation to pay each indebtedness. Appellee Mrs. Lochhead became the owner of the notes and the liens securing them, bearing the indorsement of the original payee of each of the former owners of the notes. Each maker of such indorsement, who did not stipulate that he indorsed the note without recourse, became liable for the payment of the note so indorsed, was made a party defendant in this suit, and judgment recovered against each. Appellants conveyed the land to one Couch, who assumed the indebtedness then existing

against the land, and also created additional indebtedness by the execution of other vendor lien notes in favor of appellants, as a part of the consideration. Later, appellants accepted a reconveyance of the land to them by Couch and, as a consideration for such conveyance, canceled all of the obligations in their favor created by the former conveyance of appellants to Couch. Later, appellants conveyed the land to Boykin by deed of conveyance, in which it is recited that the land was purchased subject to the indebtedness due on the notes in suit, and due to the John Hancock Mutual Life Insurance Company.

When Boykin, by virtue of appellants' conveyance to him, became the owner of the land, he held same subject to the lien indebtedness above described. The primary obligation of appellants created by Massey's deed to them, for both the $11,000 indebtedness in favor of the Life Insurance Company, and the two notes in suit, remained unchanged. At this time the owners of the $11,000 indebtedness and the owners of the indebtedness evidenced by the two notes in suit could look to appellants as primary obligors for the payment of such indebtedness, subject of course to the right of appellants to have the land first subjected to such payments.

After appellees became the owners of the notes, the maturity date of each was extended one year, and this extension was agreed to by appellees, as the owners of the notes, by Massey as maker, and by those who had subsequently become liable for payment by reason of their respective indorsements. After Boykin became the owner of the land, he negotiated a loan with the Chicago Joint-Stock Land Bank for $13,000, upon the terms hereinbefore described, and with this money discharged the indebtedness due the John Hancock Mutual Life Insurance Company. Appellees entered into a subordination agreement, by which the lien securing the two notes was made subordinate to the lien created in favor of said land bank.

Under such status of the parties and the indebtedness represented by the two notes in suit, appellants contend that appellees have released them from liability on the two notes. This contention is based on the alleged facts that: (a) The note obligation they assumed was changed by appellees in a material matter, without their consent, by the extension of the maturity date of each note, for which reason they are released from any obligation on the notes; (b) under the existing facts they occupy the status of sureties as to the payment of the notes, and their liability as sureties not having been fixed in the manner prescribed by the Negotiable Instruments Law, they are released; (c) when the indebtedness of the principal sum of $11,000 in favor of the John Hancock Mutual Life Insurance Company was discharged, the prior lien securing it was necessarily discharged, and the lien se-

curing the notes in suit would have become a first lien against the property, except for the subordination agreement entered into, without their knowledge or consent, by appellees, for which reason their obligation is released; and (d) that, in any event, the increase of the first lien from the principal sum of $11,000 to the principal sum of $13,000, and extending for a long period of time the final maturity date of this indebtedness, over the maturity date of the $11,000 indebtedness, constitutes such a material change in the status of the lien securing the notes in suit as to release them from any obligation on the notes.

■■ We cannot agree to any of these contentions. The assumption by appellants of the payment of the two notes, according to their tenor and effect, as a part consideration of the purchase price of the land, as above stated, created a primary obligation on the part of appellants in favor of the payee of the notes in suit, and this primary obligation existed at the time this suit was instituted. Caraway v. Fowler et al. (Tex. Com. App.) 267 S. W. 672; Hall et al. v. Conine et al. (Tex. Civ. App.) 230 S. W. 823; Hill v. Hoeldtke, 104 Tex. 594, 142 S. W. 871, 40 L. R. A. (N. S.) 672. This obligation of appellants was not changed by the extension of the maturity of the two notes without their knowledge or consent. If appellants occupied the status of sureties, then their contention in this respect might be correct.

■ The lien on the land, securing the insurance company, being superior to the lien on the land securing payment of the two notes in suit, Boykin, the owner of the land, undoubtedly had the right, without the agreement or consent of appellants, to obtain an extension of the debt secured by the first lien in order to protect the land from forced sale to liquidate such indebtedness. The insurance company, the owner of the debt secured by this first lien, had the right to transfer such debt and lien to the land bank, under any terms that would protect and hold in existence the first lien on the land to secure payment. The conclusion is irresistible that, when the $11,000 indebtedness to the insurance company was discharged by funds secured as a loan for that purpose from the land bank, with the intention that the first lien on the land should continue in force to secure the payment of the funds thus obtained, appellants cannot complain because such purpose was accomplished. In the instant case, it was accomplished by the subordination agreement of appellees. No new debt was actually created, for the transaction constituted merely a continuation of the old debt; no new lien against the land was actually brought into existence, but merely a continuance of the old lien for the identical purpose for which it was originally brought into existence. Instead of appellants being prejudiced by this transaction, they were benefited,

for the reason that they were relieved by the transaction with the land bank from their assumption to pay the original indebtedness of $11,000. The second lien on the land, to secure payment of the two new notes in suit, still remains in existence, and such lien was foreclosed on the land by the judgment of the court.

This, in effect, disposes of all of appellants' assignments of error, and it necessarily follows that, in our opinion, the judgment of the lower court should be affirmed, and it is so ordered.

Affirmed.