C. B. CHAPMAN ET AL. V. CECIL C. CRICHET.

No. 6668. Decided June 3, 1936.
Rehearing overruled July 15, 1936.
(95 S. W., 2d Series, 360; 96 S. W., 2d Series, 64.)

*Harrison, Scott & Rasberry, McKenzie, Walthall & Gamble, Jones, Goldstein, Hardie & Grambling,* all of El Paso, for plaintiffs in error.

In arriving at the intention of the parties, their situation with reference to the subject matter thereof, and the surrounding facts and circumstances are always admissible and may be looked to in ascertaining whether the contract is uncertain or ambiguous, and the contract of writing is to be construed in the light of such facts and circumstances. Ryan v. Kent (Com. App.), 36 S. W. (2d) 1007; Hoffer Oil Co. v. Hughes, 16 S. W. (2d) 901; Caddo Holding Corp. v. Morrow, 41 S. W. (2d) 92; 13 C. J., p. 520, par. 481, "Contracts"; 22 C. J., p. 1192, par. 1593, "Evidence."

A note is nothing more than the evidence of a debt. The assumption of a note is the assumption of a debt, and the

assumption of certain notes changed in form by renewal was tantamount to the assumption of the renewal notes, and the assumption of *all* the notes described in a deed implies the existence of all the notes. Newman v. San Antonio Traction Co., 155 S. W., 688; 6 Tex. Jur., "Bills and Notes," par. 173; 13 C. J., 540, par. 510, "Contracts."

*W. H. Winter* and *Fred C. Knollenberg,* both of El Paso, for defendant in error.

MR. JUDGE SMEDLEY, of the Commission of Appeals, delivered the opinion for the court.

On trial without a jury in district court judgment was rendered in favor of plaintiffs in error against defendant in error and A. R. McMahon jointly and severally for the amount of the principal, interest and attorney's fees due on five negotiable promissory notes, each in the sum of $500.00, and for foreclosure of a deed of trust lien on a tract of land in El Paso County. On appeal by defendant in error only the Court of Civil Appeals reformed the judgment of the district court by eliminating the part of it that imposed personal liability upon defendant in error. 63 S. W. (2d) 1099.

Prior to December 5, 1924, the tract of land was owned by defendant in error Crichet and was encumbered by deed of trust lien securing three notes, each in the sum of $500.00, due December 13, 1924, 1925 and 1926, respectively, which he had executed to the First Mortgage Company of El Paso. Crichet conveyed the land on December 5, 1924, to M. P. Hignett, the deed reciting as consideration $500.00 in cash, the payment by Hignett of the first of the three $500.00 notes belonging to the mortgage company, the assumption by Hignett of the payment of the other two of said $500.00 notes, and the execution by Hignett of four notes payable to Crichet, the first two being each for $500.00, the third for $1,000.00, and the fourth for $1315.00, and being due December 15, 1925, 1926, 1927 and 1928, respectively. This deed was recorded in Book 435, at page 192, of the deed records of El Paso County. The notes given by Hignett to Crichet were secured both by vendor's lien and by deed of trust lien.

Hignett did not pay the first of the three notes owned by Crichet to the mortgage company, but on the next day, December 6, 1924, he executed three notes each in the sum of $500.00 payable to said mortgage company, due December 6, 1925, 1926 and 1927, respectively, and given in renewal and extension of the three notes executed by Crichet which Hignett

had agreed to assume and pay. These new notes were secured by deed of trust. Crichet by written instrument consented to this rearrangement, extension and renewal and further agreed that the lien securing the four notes held by him should be secondary and inferior to the lien securing the notes belonging to the mortgage company.

On March 12, 1926, Crichet assigned and transferred to First Mortgage Company of El Paso the two notes for $500.00 each payable to him, executed by Hignett, and agreed that the lien securing the notes so transferred should be prior and superior to the lien securing the other two notes of the series which were retained by him. On the same day, March 12, 1926, Hignett executed five notes payable to the First Mortgage Company of El Paso, each in the sum of $500.00, the first three due March 12, 1927, 1928 and 1929, respectively, and the other two due March 12, 1930, and executed another deed of trust securing these notes. As appears from recitals in the deed of trust, these five notes were executed in renewal and extension of the three notes executed by Hignett to the mortgage company on December 6, 1924, and the two notes executed by Hignett which were assigned by Crichet to the mortgage company. Crichet by written instrument, signed and acknowledged, gave his consent to this rearrangement, extension and renewal of the indebtedness and agreed that the lien securing the notes held by the mortgage company should be superior to the lien securing the two notes which he had retained.

On November 1, 1927, Hignett conveyed the land to Crichet, the deed reciting as consideration the sum of $10.00 and "the assumption and agreement to pay by the grantee herein of all the notes described in the deed from Cecil C. Crichet to M. P. Hignett, which deed is recorded in Book 435 of the deed records of El Paso County, Texas, at page 192, and the assumption and agreement to pay by the grantee of all taxes against said property." It is to be observed that the deed here referred to for description of the notes assumed by Crichet was the deed executed by Crichet to Hignett on December 5, 1924, in which were described three notes, each in the sum of $500.00, executed by Crichet, payable to the mortgage company, and which Hignett agreed to assume and pay, and two notes each for $500.00, one for $1000.00 and one for $1350.00, executed by Hignett, payable to Crichet.

Crichet accepted the deed last described, went into possession of the land, and made payments of interest to the mortgage company while he owned the land.

By deed dated January 2, 1929, Crichet conveyed the land to A. R. McMahon, the consideration recited in the deed being $1000.00 cash, the assumption by the grantee of the payment of the series of five notes aggregating $2500.00 given by Hignett to First Mortgage Company of El Paso dated March 12, 1926, and the execution of four new notes in the principal sum of $625.00.

The suit was brought on the five notes each in the sum of $500.00 given by Hignett to the mortgage company on March 12, 1926, in renewal and extension of the original five notes each in the sum of $500.00 described in the deed executed by Crichet to Hignett on December 5, 1924. In a trial amendment plaintiffs in error alleged the execution of the several original and renewal notes, the deeds and other instruments above described, with knowledge and assent on the part of Crichet to the several renewals and extensions, and alleged that his action in assuming the notes and indebtedness described in the deed of December 5, 1924, constituted an assumption and agreement to pay the notes and indebtedness sued upon.

The Court of Civil Appeals held that the terms of the deed reciting Crichet's assumption to pay the notes described in the deed of December 5, 1924, were plain and unambiguous in meaning and that such plain and unambiguous contract and assumption could not be extended so as to impose upon Crichet liability for the payment of notes other than those described.

In our opinion the Court of Civil Appeals gave too narrow and too literal an effect to the language used in the deed evidencing Crichet's assumption of the indebtedness. We agree with the conclusions of the learned trial judge that the notes sued upon by plaintiffs in error represent and stand in the place of the notes described in the deed of December 5, 1924, that they are comprehended in the assumption made by Crichet in the deed of November 1, 1927, and that he is personally bound for the payment of them by his assumption.

Crichet as part of the consideration for the conveyance to him assumed and agreed to pay an existing indebtedness against the land. Notes are not the indebtedness; they are the evidence of the indebtedness. For convenience and as an easy method of identifying an indebtedness represented or evidenced by notes we often refer to the notes as if they were the debt, and contracts drawn to evidence the assumption of such indebtedness ordinarily speak of the assumption of the notes, but it is the debt or the obligation evidenced by the

notes, that is assumed. The original notes described in the deed of December 5, 1924, were evidence of the debt owed by Hignett as part of the purchase price of the land. That part of the debt represented by the five notes each for $500.00 described in that deed was extended and renewed and was finally evidenced by the five notes each for $500.00 executed by Hignett to the First Mortgage Company on March 12, 1926. By the extensions and renewals the debt and the lien securing it were carried forward and kept in effect. When Crichet assumed the debt represented by the notes described in the deed of December 5, 1924, he assumed the debt represented by the notes herein sued upon, both sets of notes constituting evidence of the same debt.

There is no basis for a contention that Crichet might have intended to assume and pay the debt only in accordance with the maturity dates of the original notes or that some injustice might be done him by requiring him to pay the notes as extended. He was fully informed as to each agreement for extension of the debt and gave his written consent to it when it was made.

■ The views above expressed as to continued identity of the debt are supported by the settled rule, that, in the absence of evidence showing that the parties intended to extinguish the original indebtedness by the execution of renewal notes, it will remain in full force and effect.

"It is a well-settled rule that the giving of a new note for a debt evidenced by a former note does not extinguish the old note unless such is the intention of the parties. And, as elsewhere stated in this article, there is no presumption of the extinguishment of the original paper by the execution and delivery of a new note, but the burden of proving a novation is on him who asserts it. In general the giving and taking of the new paper simply operates as an extension of the time of payment of the indebtedness. Under such circumstances the holder may sue either on the renewal note or on the original; or, it would seem, the creditor may sue on the note given in renewal and in the alternative on the original note." 6 Tex. Jur., p. 810, Sec. 173.

Judge Brown said, in Otto v. Halff & Bro., 89 Texas, 384, 390, 34 S. W., 910, 59 Am. St. Rep., 56:

"The rule is established by the great weight of authority in England and the courts of the American states, that where a debt exists and a note is given therefor by the debtor, the right of action is suspended upon the original consideration

until the note becomes due and if it is unpaid at that time, the creditor may elect to sue upon the original indebtedness or upon the note unless the note was accepted as payment of the pre-existing debt. If suit be brought upon the original consideration and the note be negotiable, the plaintiff must show that it has not been transferred and is lost or destroyed or he must produce and surrender it."

See, also: McGuire, Helm & Co. v. Bidwell, 64 Texas, 43, 45; Cooper Grocery Co. v. Strange (Com. App.), 18 S. W. (2d) 609, 613; Martin v. Dial (Com. App.), 57 S. W. (2d) 75, 84; Rushing v. Citizens National Bank, 162 S. W., 460 (application for writ of error refused); Hill v. Texas Trust Co., 236 S. W., 767; Darby v. Farmers State Bank, 253 S. W., 341, 343.

If the note given in renewal were itself the debt, instead of merely evidence of the debt, the creditor would not have the right to elect to sue upon the original indebtedness.

■ It is true that the recital in the deed as to Crichet's agreement of assumption is unambiguous. He agreed to assume a certain debt evidenced by notes described in a deed to which apt reference is made. However, the extrinsic evidence as to the extension and renewal of that debt does not contradict or vary the written agreement and was not offered for the purpose of construing the writing. It merely serves to identify the present evidence of the debt with the debt described in the deed, and is admissible on the same principle that permits the introduction of extrinsic evidence to identify on the ground land described in a deed. Macmanus v. Orkney, 91 Texas, 27, 33, 40 S. W., 715; Harkey v. Cain, 69 Texas, 146, 149, 6 S. W., 637; Miller v. Hodges (Com. App.), 260 S. W., 168, 170; Higgins v. Bankers' Mortgage Co. (Com. App.), 13 S. W. (2d) 683, 684; Coppard v. Glasscock (Com. App.), 46 S. W. (2d) 298; 14 Tex. Jur., pp. 986-990, Secs. 200-202.

■ Other assignments of error presented by defendant in error in the Court of Civil Appeals, but of which that court made no disposition, have been considered in order to determine what judgment should have been rendered by that court. Holland v. Nimitz, 111 Texas, 419, 431, 232 S. W., 298, 239 S. W., 185; Panhandle Construction Co. v. Lindsey, 123 Texas, 613, 623, 72 S. W. (2d) 1068.

■ The contention is made by several assignments that Crichet became liable, if at all, only secondarily or as surety and that he was released by extensions of the notes made without his consent. Crichet's assumption of the debt as part of the con-

sideration for the conveyance to him created a primary, and not a secondary, obligation on his part, and when the creditor accepted his promise to pay the debt, Crichet was bound to the same extent as if he had executed and delivered to the creditor his written obligation to pay. Hill v. Hoeldtke, 104 Texas, 594, 142 S. W., 871; Brannin v. Richardson, 108 Texas, 112, 185 S. W., 562; Wilson v. J. W. Crowdus Drug Co. (Com. App.), 222 S. W., 223; Edwards v. Beals (Com. App.), 271 S. W., 887; Dansby v. Stroud, 48 S. W. (2d) 1018, 1020 (application for writ of error refused); Rowe v. Massey, 54 S. W. (2d) 1094, 1097 (application for writ of error refused); Ewing v. Carter, 70 S. W. (2d) 277 (application for writ of error refused); "Contracts for the Benefit of Third Parties in Texas," by Dean Hildebrand, 9 Tex. Law Review, pp. 125 and following. Crichet did not by his assumption of the debt become an indorser. Dansby v. Stroud, supra. The extension of the maturity of the notes while Crichet was primarily bound, even if made without his consent, would not release him. Rowe v. Massey, supra.

The trial court found that the evidence failed to show a legal extension of the notes. There is no evidence of any extension except certain unexplained memoranda on some of the notes, which are of themselves insufficient as evidence of agreements of extension for definite periods and upon consideration. Pleadings of plaintiffs in error allege that notes Nos. 1, 2, 3 and 5 were extended so as to become due September 12, 1930, 1931, 1932 and 1934, respectively, but there is neither allegation nor proof showing by whom agreements for such extensions were made or when they were made, except an allegation that note No. 5 was extended by the First Mortgage Company on November 2, 1929. If such allegations are to be given the effect of proving agreements of extension, still there is no evidence that at the time the agreements were made Crichet occupied, as to the owner of the notes, the status of surety. When Crichet, on January 2, 1929, conveyed the land to McMahon, who in turn assumed payment of the debt, McMahon and Crichet by reason of such assumption became, as between themselves, principal and surety, but McMahon's assumption of the debt did not change or affect Crichet's obligation to the owners of the notes until they accepted McMahon as the principal obligor. Dansby v. Stroud, 48 S. W. (2d) 1018 (application for writ of error refused); Ewing v. Carter, 70 S. W. (2d) 277 (application for writ of error refused). There is no evidence that the owners of the notes

ever accepted McMahon as principal obligor before the institution of the suit. Consequently it does not appear from the record that the maturity of the notes was extended at a time when such extension would release Crichet.

■ Another assignment presents the contention that defendant in error was released from liability by alterations made without his consent in the maturity dates of two of the notes. Examination of the original notes accompanying the record convinces us that the marks appearing on them were intended as memoranda, not as alterations of the terms of the notes.

No reversible error is presented by any of the assignments of error. The questions raised by most of them are answered by what has been said and by Hill v. Hoeldtke and the other similar authorities above cited.

The judgment of the Court of Civil Appeals is reversed and the judgment of the district court affirmed.

Opinion adopted by the Supreme Court June 3, 1936.

Rehearing overruled July 15, 1936.