**S. E. THOMPSON, Appellant,**

v.

**TROPICAL SAVINGS AND LOAN ASSOCIATION et al., Appellees.**

No. 14688.

Court of Civil Appeals of Texas.

San Antonio.

May 22, 1968.

Rehearing Denied June 6, 1968.

Johnson & Davis, Harlingen, for appellant.

Ewers, Toothaker, Ewers, Byfield & Abbott, McAllen, Hardy & Sharpe, Brownsville, for appellees.

BARROW, Chief Justice.

This is an appeal by appellant, S. E. Thompson, from a take-nothing summary judgment granted appellees, Tropical Savings and Loan Association, The Title Guarantee Company of Baltimore, Maryland, and Cameron County Title Company, Inc. The cause of action arose from the financial manipulations of Jack L. Forrester, an attorney now under indictment in Cameron County for forgery and theft by false pretext, and the basic issue involved is who is to stand the loss brought about by Forrester's fraud which has resulted in approximately $48,000 being loaned on a $33,500 house. There is no appeal from that part of the judgment granting Thompson recovery from Forrester for the unsecured sum of $21,083.95, plus attorneys' fees of $2,175.40, and interest from November 14, 1966. Nor has an appeal been perfected as to several other defendants who were granted to take-nothing judgment.

On June 4, 1964, Thompson and his wife executed a mechanic's lien note in the amount of $22,000, payable to Roy L. Self on or before six months, and secured by a mechanic's lien contract, for construction of a home in Harlingen, Texas. This note was subsequently assigned by Self to the First National Bank of Harlingen and, later, by the First National Bank to the Harlingen National Bank. This lien and the assignments thereof were duly recorded. In the fall of 1965 Thompson, by a verbal acceptance of a memorandum prepared by Forrester, agreed to sell said house to Forrester for the sum of $33,500, payable by transfer to Thompson of Forrester's equity in fifty acres of farm land of the value of $11,200, together with assumption and payment of the mechanic's lien note on

which $20,000 was then owed on principal and $895.53 interest. The balance was to be paid in cash, but by a subsequent modification of the agreement Forrester agreed to perform all the legal work on this contract in lieu of the cash payment. Forrester secured a loan from Tropical in the amount of $26,500 in connection with this purchase, and the deal was not actually closed until December 17, 1965. At this time, Thompson and wife gave Forrester a warranty deed in which the note and lien from Forrester and wife to Tropical were described. There is nothing in the deed pertaining to the 1964 mechanic's lien note because Forrester represented to Thompson that he had paid it off.

In the meantime, Forrester had decided not to occupy this property as his home and so advised Thompson. Thompson knew that Howard Ingram had been interested in purchasing this home. Negotiations were had between Ingram, his realty agent and Thompson, which led to Thompson's working out a sale of the property on behalf of Forrester for the sum of $32,500. Thompson, who had a real estate license in connection with his property management business, was to divide the sale commission with Ingram's agent. Ingram's first contact with Forrester was after the deal was agreed upon with Thompson in November, 1965, and he was sent to Forrester by Thompson for execution of the closing papers. Ingram understood that Forrester was securing a loan from Tropical and that he was to assume same. This was satisfactory to Ingram as he thought he was thereby getting a lower interest rate plus occupancy of the house as of November 26, 1965. Although Ingram was in actual possession of the house when Tropical's appraiser inspected it, and had made the payments on the Forrester note to Tropical for a year, Tropical denied any actual knowledge of Ingram's claims until January, 1967, when Forrester's financial difficulties came to light. Ingram discovered at this time that he had no deed from Forrester. He subsequently worked out

a deal with Tropical who foreclosed on Forrester's note and deed of trust in April, 1967, and Ingram now stands with Tropical in this matter.

In the fall of 1965, Forrester was the trusted attorney of Thompson and as such was to prepare the papers carrying out the sales agreement between these two parties. Forrester applied for a loan from Tropical in the amount of $26,500, which he represented to Tropical was to be used as part of the purchase price of this property from Thompson. This loan was approved by Tropical after a credit report and actual inspection of the property. Al E. Coneway, Esq., partner of Forrester, was designated by Tropical, as requested by Forrester, to prepare the closing papers, and a disbursement report was subsequently received by Tropical, purportedly signed by Coneway. Actually this signature was a forgery and Coneway knew nothing of the deal. A title guarantee policy was issued Tropical by The Title Guarantee Company through its agent, Cameron County Title Company, Inc. Apparently, the original mechanic's lien was not discovered and no steps were taken by Tropical or the title companies to discharge same. The entire $26,500 was disbursed by Tropical direct to Forrester and, contrary to his representation to Thompson, he had not paid off the 1964 note or discharged the original mechanic's lien securing same, nor did he apply the loan proceeds on the purchase as represented to Tropical.

Thus, in the spring of 1966, the record title to this property occupied by Ingram was in Forrester, subject, first to the 1964 mechanic's lien securing the note given Roy L. Self by Thompson, and second to the December, 1965, deed of trust given Tropical by Forrester as security for the lien note then being paid by Ingram in monthly installments. About May 11, 1966, Forrester contacted Thompson and arranged a loan of $20,000. Forrester assured Thompson that he could secure this loan with a first lien on said home. Thompson made the loan and Forrester

gave his note payable on or before October 11, 1966, in the face amount of $22,000, secured by the mechanic's lien of June 4, 1964, executed by Thompson to Self and assigned at this time by the Harlingen National Bank to Thompson, after the bank had received the full amount owed on said 1964 note. The May 1966 note, prepared by Forrester, erroneously recited that Forrester had assumed the 1964 mechanic's lien note in the 1965 deed from Thompson and wife to Forrester, and further stated that the 1966 note was a renewal and extension of the unpaid principal and interest balance on the 1964 note. On November 14, 1966, Forrester paid Thompson $1120.98 interest, but nothing else has been paid on the 1966 note.

Thompson seeks by this suit to have a judicial declaration that the 1964 mechanic's lien is a valid and prior lien which is superior to the deed of trust of Tropical, and that he is entitled to foreclose same. To accomplish this he seeks to reform his warranty deed of December 17, 1965, to Forrester to include an assumption by Forrester of the 1964 mechanic's lien note. He also urges that same has not been discharged. In the alternative, Thompson asserts that fact issues of agency and negligence are raised against Tropical and the title companies in their respective dealings with Forrester for which he seeks damages equal to the amount owed on the 1966 note. As a third general proposition, Thompson urges that the trial court committed procedural errors which denied Thompson a reasonable opportunity for full discovery.

Tropical urged by its second motion for summary judgment that since Thompson, the principal debtor on the 1964 mechanic's lien note, became the holder of the instrument in his own right after maturity, the note was discharged under Art. 5939, § 119 (5), Vernon's Ann.Civ.St.[1] Furthermore, since Thompson thought the mechanic's

lien note had been paid off by Forrester at the time Thompson gave Forrester a general warranty of title, he cannot now abrogate his warranty which inured to the benefit of Tropical. Appellees also assert on this appeal that a take nothing judgment was properly granted under the doctrine of after-acquired title.

Subd. 5, § 119 of Art. 5939 provides: "A negotiable instrument is discharged: When the principal debtor becomes the holder of the instrument at or after maturity in his own right." Thompson urges, however, that this cause is controlled by Sec. 121 of Art. 5939, which provides: "Where the instrument is paid by a party secondarily liable thereon, it is not discharged; but the party so paying it is remitted to his former rights as regards all prior parties, and he may strike out his own and all subsequent indorsements, and again negotiate the instrument, except: (1) Where it is payable to the order of a third person, and has been paid by the drawer; and (2) Where it was made or accepted for accommodation, and has been paid by the party accommodated." In Fox v. Kroeger, 119 Tex. 511, 35 S.W.2d 679, 681, 77 A.L.R. 663 (1931), the Supreme Court in construing these two sections together said: "When so construed, the manifest meaning is that the payment by the principal debtor or by the party accommodated discharges the instrument, but payment by a party secondarily liable, other than the principal debtor or party accommodated, does not discharge or extinguish the debt." See also 9 Tex.Jur.2d, Bills and Notes, § 209.

Thompson concedes that he was the principal debtor on the 1964 note from June 4, 1964, until December 17, 1965, but urges that he became the surety on that date and therefore the note and lien were not discharged in May, 1966. Unquestionably, as between Thompson and Forrester, Forrester assumed payment of this note in December,

---

1. The transaction occurred prior to adoption of the Uniform Commercial Code and is governed by the Negotiable Instruments Act.

1965, and in fact assured Thompson that he had paid same off. Forrester thereby became primarily liable as between Thompson and Forrester. Gunst v. Pelham, 74 Tex. 586, 12 S.W. 233 (1889). However, it must be recognized that such assumption was never accepted or agreed to by the holder of the note. Cf. Straus v. Brooks, 136 Tex. 141, 148 S.W.2d 393 (1941); Chapman v. Crichet, 127 Tex. 590, 95 S.W. 2d 360 (1936). We have found no authority which holds that the "principal debtor" on a negotiable instrument is changed after its delivery other than by a novation.

It is seen that the Harlingen National Bank, holder of the 1964 note, was paid the amount on said note by Forrester in accordance with his December, 1965, promise to Thompson. Thompson does not contend he knew that any part of the proceeds of the 1966 loan to Forretser was to be used for this purpose. In fact, he thought said note had been paid in December, 1965. This 1964 note, which was then long past due, was delivered to Thompson by Forrester with his fraudulent representation that same was being renewed by Forrester to secure the new note of $22,000 with a valid first lien. Thompson thus ended up as holder of his own note after its maturity. Such note and the lien securing same were thereby discharged under the express provisions of Subd. 5, § 119, Art. 5939. Texas Bank & Trust Co. of Dallas v. Custom Leasing, Inc., 402 S.W. 2d 926 (Tex.Civ.App.—Amarillo 1966, no writ); Smith v. Cooley, 164 S.W. 1050 (Tex.Civ.App.—Amarillo 1914, writ ref'd).

Thompson's claim of a superior lien against Tropical's lien is contingent upon reformation of his warranty deed of December 17, 1965, to include assumption by Forrester of the 1964 note and mechanic's lien. There is no contention, however, that there was ever any intention by Thompson, Forrester, or Tropical to include this assumption in the deed. Rather, Thompson admits that no assumption was included because Forrester represented to Thompson that said note had been paid by Forrester with some oil money. Thompson was aware of Tropical's loan to Forrester and the warranty deed made reference to same. Reformation of the deed at this time would abrogate Thompson's own general warranty of title. City of Beaumont v. Moore, 146 Tex. 46, 202 S.W.2d 448 (1947). Furthermore, under such general warranty deed, any after acquired title to said premises would pass through Thompson to his grantee. Burns v. Goodrich, 392 S.W.2d 689 (Tex.Sup.1965).

The trial court correctly found under the summary judgment record before it that the vendor's lien of Tropical was superior to the rights of Thompson in this property. By his second and third amended original petitions, filed on June 30, 1967 and July 28, 1967 Thompson joined appellees Title Guarantee Company and Cameron County Title Company as defendants and sought to recover a money judgment against these defendants as well as Tropical because of the negligence of each such party in its dealings with Forrester. It was also asserted that Forrester was the agent of said parties in this transaction and was an approved attorney for said title companies.

Insofar as Tropical was concerned, the trial court ordered these amended petitions stricken and suppressed Thompson's motion for discovery of evidence in support thereof, because said negligence theory was raised after the motion for summary judgment had been submitted to the court.[2]

---

2. Tropical's second motion for summary judgment was set for June 28, 1967. By order signed June 29, 1967, the time for submission and determination of same was extended to July 31, 1967. The amended petitions and motions for discovery were filed subsequent to June 29 and prior to July 31. However, in the final judgment the trial judge declared that on June 28, after the motion was heard, he announced that he would grant same, but subsequently granted Thomp-

These matters were considered raised as to appellees Title Guarantee Company and Cameron County Title Company. On August 7, 1967 a final judgment was entered granting the motions for summary judgment of all appellees and decreeing that Thompson take nothing as to them. We conclude that these motions for summary judgment were properly granted on their merits as to all three parties and therefore do not consider Thompson's point that the trial court abused its discretion in considering the summary judgment record made against Tropical as of June 28, 1967.

Each of these parties had constructive notice of the mechanic's lien securing the 1964 note, in that same was properly recorded prior to the December 17, 1965, warranty deed to Forrester. Tropical's loan to Forrester was protected by a title guaranty policy issued to it by appellee Title Guarantee Company through its local agent, Cameron County Title Company. All concede that until this note came in the hands of Thompson after maturity said lien was superior to Tropical's lien. Thompson established that these parties also had actual notice of this lien or at least were placed on inquiry. Unquestionably, each of said parties made the same mistake as Thompson by trusting Forrester to close the deal, including the disbursement of all funds. The effect of Thompson's alternative claim is that in the exercise of diligence, the parties should have seen that the 1964 note was paid by Forrester at the time of closing of the December, 1965, transaction. Obviously, they should have done so, and if said note had not been subsequently discharged the Title Guarantee Company would undoubtedly have been liable to Tropical under its title policy for any loss because of the superior lien. Thompson's claim for damages from said parties, however, fails for lack of privity. None of these parties had any contractual dealings with Thompson or owed him any

obligation in this transaction. Furthermore, it is seen that the basis of Thompson's claim is not over this 1964 note, in that same was fully paid by Forrester, but rather his claim is over the $20,000 loaned in May, 1966, and the $22,000 note given at that time.

The judgment of the trial court is affirmed.

son additional time for the limited purpose of filing depositions already taken and joining an additional party. He ac-

cordingly corrected his June 29th order nunc pro tunc to so provide.