Brooks G. BRADFORD, Appellant,

v.

Betty Lou McELROY, Individually and as Independent Executrix of the Estate of Robert L. McElroy, Deceased, Appellee.

No. 3–87–094–CV.

Court of Appeals of Texas, Austin.

Feb. 3, 1988.

Don Busby, Busby & Associates, P.C., Temple, for appellant.

George Dulany, Belton, for appellee.

Before POWERS, BRADY and ABOUSSIE, JJ.

POWERS, Justice.

The trial court awarded Betty Lou McElroy summary judgment in her suit on a promissory note against Brooks G. Bradford; and, the court overruled Bradford's concurrent motion for summary judgment wherein he contended that he was not personally obligated on the note because he had signed it solely in a representative capacity. On appeal, Bradford contends each action by the trial court was reversible error. We will affirm the trial-court judgment insofar as it overrules Bradford's motion for summary judgment and reverse the summary judgment awarded McElroy.

### THE CONTROVERSY

If believed by the trier of fact, certain portions of the summary-judgment record would establish the following occurrences: Bradford agreed to act as trustee for his father (Brooks G. Bradford, Sr.) and father-in-law (Norman Way) in their purchase of land from McElroy and her late husband (Robert L. McElroy). Bradford negotiated with Bob Utley, the McElroy's "listing agent", and on December 12, 1973, Bradford, the McElroys, and Utley signed a contract for the sale and purchase of the land and the payment of Utley's commission. Bradford signed the contract "Brooks G. Bradford, Trustee," the designation he was also given in the contract as the purchaser of the land. The contract refers to "Barge, Utley, Shelton, Inc." as the "real estate agent" under the signature of "R.K. Utley."

The contract was consummated December 12, 1973. The McElroys then executed and delivered their conveyance of the land to "Brooks G. Bradford, Trustee." Bradford paid part of the purchase price in cash; and, for the remainder of the purchase price, he executed and delivered a promissory note payable to the McElroys and signed by him "Brooks G. Bradford, Trustee." The note was secured by a vendor's lien reserved in the McElroys' conveyance and additionally secured by the lien of a deed of trust executed by Bradford and signed "Brooks G. Bradford, Trustee." None of the documents pertaining to the transaction indicated the persons for whom Bradford acted as "trustee." Later in the day, Bradford entered into a written trust agreement with his father and father-in-law regarding the land purchased for them earlier.

Bradford never communicated with the McElroys save through Utley, their listing agent. Bradford told Utley, in the course of negotiation, that he was purchasing the land for his father and father-in-law, naming them. We may say, at this point, that the law imputes to McElroy whatever Bradford communicated to Utley; whether Utley was solely the McElroys' agent or a dual agent is immaterial since there was no allegation of fraud. *See Victory v. State*, 138 Tex. 285, 158 S.W.2d 760 (1942); *United States Fidelity & Guaranty Co. v. San Diego State Bank*, 155 S.W. 2d 411 (Tex.Civ.App.1941, writ ref'd w.o. m.); Note, 3 Tex.L.Rev. 202 (1925).

In 1979, following default on the note at its maturity, the land was sold under the

deed of trust and a portion of the debt satisfied. McElroy sued on the note in the present case to recover from Bradford the balance owing, contending he is personally obligated thereon even though he executed all the relevant documents "Brooks G. Bradford, Trustee." Bradford contends he is not personally obligated because the note and other documents demonstrate his intention to sign the note solely in a representative capacity, even though none of the documents contain the names of the individuals for whom he acted as "trustee." Both parties moved for summary judgment on the basis of their opposing contentions.

The parties agree that the promissory note, being a "negotiable instrument," comes within the terms of Chapter 3 of the Texas Business and Commerce Code (1968 & Supp.1988). Similarly, there is no dispute that the word "trustee," following Bradford's signature on the note, clearly communicated his representative capacity to the McElroys, for a "trustee" is one kind of "representative" under the Code, as stated in § 1.201(35). There is no contention that Bradford acted without authority in his execution and delivery of the note.

## DISCUSSION AND HOLDINGS

Section 3.403 of the Code provides as follows regarding the liability of an authorized representative in Bradford's position:

> (a) A signature may be made by an agent or other representative, and his authority to make it may be established as in other cases of representation....
> (b) An authorized representative *who signs his own name* to an instrument
>
> (1) *is* personally obligated if the instrument neither names the person represented *nor* shows that the representative signed in a representative capacity;
>
> (2) *except as otherwise established between the immediate parties,* is personally obligated if the instrument names the person represented but does not show that the representative signed in a representative capacity, or *if the instrument does not name the person represented but does show that the represent-*

*ative signed in a representative capacity.*

\*   \*   \*   \*   \*   \*

(emphasis added). The present controversy falls squarely within the emphasized portion of subsection (b)(2) set forth above: the instrument *omits* the name of the person represented by Bradford but it *does* show that he signed the note *in a representative capacity.* Bradford is therefore personally obligated on the note "except as otherwise established between the immediate parties." For the meaning of the quoted expression we are referred, in Comment 3, to the decision in *Megowan v. Peterson,* 173 N.Y. 1, 65 N.E. 738 (1902).

In the *Megowan* case, Peterson had affixed the word "trustee" after his signature on a promissory note, but the note itself did not disclose the persons for whom he was acting in that representative capacity. Under the terms of a New York statute, Peterson was not "exempt" from personal liability on a note of that character. In this respect, the New York statute is identical to § 3.403(b)(2) of the Code; but, unlike that section, the New York statute contained no exception for suits between the immediate parties. The *Megowan* court held, nevertheless, that the statute was not designed to alter the common-law rule that the consideration for the note and the conditions under which it was delivered may be shown by parol as between the original parties and others having notice of the facts relied upon as constituting a defense to the note. Under this common-law rule, not changed by the statute, Peterson was entitled to show by parol that he disclosed, when he delivered the note, that the consideration was for the benefit of other named persons and that he gave the note as their trustee. *Megowan,* 65 N.E. at 738.

That this result was intended by the Legislature, in its adoption of the Code, is also indicated by the following analysis of § 3.403(b)(2):

> When the authorized agent signs paper in a way that discloses his representative capacity but does not name the principal he is liable on the paper. *However, with respect to the party with whom he*

*dealt, parol evidence is admissible to identify the principal and thus free the signer from liability on the paper.*

With respect to subsequent takers of the paper, such evidence is not admissible and the signer is personally liable on the paper.

6 Anderson, *Uniform Commercial Code* § 3–403:48, at 140 (3rd Ed.1984) (emphasis added); *see also Dynamic Homes, Inc. v. Rogers,* 331 So.2d 326 (Fla.App.1976); *Wolfram v. Halloway,* 46 Ill.App.3d 1045, 5 Ill.Dec. 264, 361 N.E.2d 587 (1977); *Lowry v. Lomire,* 143 Ga.App. 479, 238 S.E.2d 594 (1977).

Therefore, the statement in Bradford's deposition transcript—that he disclosed to the McElroys' "listing agent" that he was acting for named persons who were actually to own the land given in consideration of the note—was sufficient to preclude summary judgment against Bradford, on the note that he indisputably signed in a representative capacity, in this suit between the immediate parties. We hold, in consequence, that the trial court erred in sustaining McElroy's summary judgment against Bradford on the note.

While this same reasoning might appear to compel a holding that the trial court erred in overruling Bradford's motion for summary judgment, we believe the trial court was correct in overruling that motion. Bradford, an interested "witness," stated clearly, directly, and positively that he told Utley he "was buying [the land] for Norman Way and James Bradford [Sr.]." This statement by Bradford is not contradicted in the summary-judgment record. Nevertheless, the summary-judgment record is not sufficiently clear and unequivocal concerning Utley's identity and the fact of his agency to establish Bradford's lack of personal liability as a matter of law.

Specifically, we refer to a discrepancy in Bradford's reference to "Bob Utley" as the McElroys' "listing agent," in Bradford's deposition transcript, as compared to the contract document wherein "Barge, Utley, Shelton, Inc." is designated the "Real Estate Agent" for whom "R.K. Utley" evidently executed the contract. Because our holding above depends upon an imputation of Bob Utley's knowledge to the McElroys, we hesitate to determine as a matter of law Utley's identity and agency, especially when the parties have not developed this aspect of the controversy. Consequently, we conclude the trial court properly refused to grant Bradford judgment as a matter of law.

We believe our decision, concerning the construction and application of § 3.403(b)(2) of the Code, is harmonious with the decision of the Supreme Court of Texas in *Seale v. Nichols,* 505 S.W.2d 251 (Tex. 1974). That decision is not directly applicable in the present case because *Seale* involved opposite circumstances: (1) the note *did not show* that the signer executed it in a representative capacity; and, (2) there was *no showing* that the signer *ever* communicated to the payee that he was acting in that capacity. Nevertheless, the Court evidently referred as follows to a case like the one before us:

> If an agent discloses his representative capacity [to] the payee of the note, and the payee then accepts the note, it is our opinion that this might be sufficient summary judgment proof to raise an issue of fact to "otherwise establish" his representative capacity and defeat the payee's motion for summary judgment. If the holder [sic] then desires to negative any "circumstances otherwise," he could bring forward such proof.

505 S.W.2d at 255. This passage from *Seale* is consistent with our holding in the present appeal.[1]

■ Finally, we should point out an anomaly that might arise in the case after

---

1. We do not conceive that the Court's reference to "the holder" was intended to mean that the rule would be the same when the instrument had been endorsed to a third person without notice, giving rise to a controversy between other than the immediate parties. *See* § 1.201(20). This appears to be only an inadvertent misstatement by the Court.

remand. Should it be determined finally that Bradford is not liable on the note, the Code compels the conclusion that his principals (his father and father-in-law) may not be held liable *on the note.* This must be the result because their names do not appear on the note.[2] It does not necessarily mean, however, that McElroy is left without any relief at all. In such a case, she, like any payee or holder of the note in these circumstances, may still recover on grounds apart from the note itself.[3]

We reverse the summary judgment against Bradford and affirm the overruling of his motion for summary judgment, ordering that the case be remanded to the trial court for proceedings consistent with this opinion.

Reversed and Remanded in Part; Affirmed in Part.

---

2. This result is the legal effect of § 3.401, providing that "[n]o person is liable on an instrument unless his signature appears thereon," whether by written signature or another use of a name, a trade name, or an assumed name. The *names* of the father and father-in-law do not appear on the note; consequently, they may not be held liable *thereon* under the plain words of § 3.401. *See also* § 3.403, comment 2 (even though an authorized representative signs the instrument, "the principal is not liable on the instrument, under the provisions of [§ 3.401] relating to signatures, unless the instrument names him and clearly shows that the signature is made on his behalf."); *see also* White & Summers, *Uniform Commercial Code* § 13–3, at 547–550 (2d ed. 1983). *Contra Evelyn Hills Pharmacy, Inc. v. First Nat. Bank,* 289 Ark. 351, 712 S.W.2d 291 (1986).

3. Comment 1 to § 3–401 contains this statement:

Nothing in this section is intended to prevent any liability arising apart from the instrument itself. The party who does not sign may still be liable on the original obligation for which the instrument was given, or for breach of any agreement to sign, or in tort for misrepresentation, or even on an oral guaranty of payment where the statute of frauds is satisfied....

These remedies necessarily follow from the proposition that the note is merely evidence of a debt; it is not the debt itself even though we often refer to the note as if it were the debt. *Chapman v. Crichet,* 127 Tex. 590, 95 S.W.2d 360, 363 (1936). The court in *Evelyn Hills Pharmacy, Inc. v. First Nat. Bank, supra,* evidently overlooked this fundamental distinction and the right of the holder or payee to recover on grounds apart from the note itself. The effect of that court's decision is simply, and blatantly, to refuse enforcement of the Arkansas version of § 3.401.