## TURNER v. BOYKIN et al.

### No. 6121.

Court of Civil Appeals of Texas. Amarillo.
Jan. 29, 1951.

W. F. Nix, Amarillo, for appellant.

Cooper & Finney, Amarillo, for appellees.

PITTS, Chief Justice.

This suit was filed by appellant, G. H. Turner, against appellee, Roy Canady and one N. L. Boykin, alleging a claim of indebtedness in the sum of $17,069.06 against both Canady and Boykin as evidenced by a promissory note, secured by chattel mortgage, both executed by Boykin alone, who admitted liability in the trial court and is not before us on appeal. The case was tried to a jury and judgment was rendered for appellant Turner as against defendant N. L. Boykin for the balance due on the note and a foreclosure of the chattel mortgage lien, but upon the jury verdict appellant was denied recovery against Roy Canady for any part of his claimed indebtedness and it was from the latter part of the judgment only that appellant has perfected his appeal. As grounds for recovery against appellee, Canady, appellant pleaded that Canady had agreed by contract between himself and Boykin to assume liability for one-half of the indebtedness in question when the said contract "as a

whole" was consummated and that the said contract had been "fully consummated".

The sole question to be determined here is whether or not appellee, Roy Canady, is liable to appellant, G. H. Turner, for one-half of the balance due on the note in question according to the pleadings, the facts presented and the law governing such. The record reveals that appellant owned and was operating the City Cab Company in Amarillo on or about January 18, 1949, when he sold the business to N. L. Boykin under the terms of a written contract. As part payment for such, on January 18, 1949, Boykin executed a promissory note in the sum of $18,000, payable to appellant at the rate of $300 per month, interest included, from March 10, 1949, until fully paid, secured by a chattel mortgage of the same date covering certain motor vehicles and other personal property conveyed to him by appellant as more fully described in the mortgage and needed to operate the taxi cab business. The note in question contained the usual clauses providing for interest and attorney fees and the acceleration clause authorizing the payee thereof to declare the full amount due in case of default in any payment. By fall of 1949 Boykin had made his monthly payments on the note but realized he could not continue to make the payments without help when he began negotiating a trade with appellee endeavoring to sell him a one-half undivided interest in the City Cab Company, together with a one-half interest in the B & B Transfer and Baggage Company, then owned also by Boykin. On October 29, 1949, Boykin and appellee Canady entered into a written contract whereby Boykin agreed to sell to appellee an undivided one-half interest in all of the assets of both the City Cab Company and the B & B Transfer and Baggage Company for a consideration therein stated and under the terms therein stated. The contract further provided that Boykin would deliver to appellee a bill of sale covering the property and that an inventory of all of the property composing the assets of both companies would be made, marked "Appendix 'A'" and attached to the contract as a part thereof. The terms of the contract

further provided that appellee Canady would assume one-half of the aggregate outstanding indebtedness existing against the two companies in the amount of $24,-999.27 and the designated interest in the property was to be conveyed free from any and all other debts and liens except those mentioned in the contract. The contract specifically further provided, in effect, that the same would be consummated thereafter on November 1, 1949, provided the terms of the contract had been complied with by both parties thereto. On November 1, 1949, appellee Canady named as the second party to the contract had fully complied with all of the terms of the contract required of him by paying the stipulated consideration but N. L. Boykin, the first party named to the contract, had not delivered to Canady a bill of sale showing a list of the property in question as required by the terms of the contract. Upon the statement of Boykin that he had the information ready to make such an inventory and bill of sale and upon his promise that such would soon be done Canady entered into the joint enterprise with Boykin on November 1, 1949, and helped to operate the business of both companies. The two businesses continued to be jointly operated by both parties for approximately two months, during which time Canady and his attorney who drew the contract sought several times unsuccessfully to get from Boykin an inventory of the property and a bill of sale showing in concrete form a full list of the property in which Canady had bought an interest. As time passed, Boykin never at any time furnished Canady with an inventory of the said property or a bill of sale to his interest in the same as required by the terms of the contract. During the two month's period of joint operation of the two businesses Canady had also satisfied himself that Boykin owed more debts and was under more obligations for debts for which the assets of the two companies were liable than had been reflected by the terms of the contract. Early in January of 1950 Canady called upon Boykin for a settlement and a dissolution of the joint enterprise being then operated by them involving the two business establishments be-

cause of Boykin's refusal and failure to comply with the terms of the contract between them as required of him and because there were more debts against the assets of the two companies than had been represented to him. A contract of settlement between the parties and a dissolution of the joint operation of the two businesses was made by them as is evidenced by an instrument in writing signed by N. L. Boykin of date January 11, 1950. The said instrument in part acknowledged receipt of the sum of $1,600 paid by appellee to Boykin in consummation of their settlement agreement. The said instrument further acknowledged that Boykin alone would be responsible and liable for the operation of the City Cab Company and be liable for all of its outstanding indebtedness as of date January 1, 1950, and thus released appellee from any liability thereafter for any of such indebtedness. In order to help affect the settlement agreement between appellee and Boykin, appellant loaned to appellee the $1,600 which appellee paid to Boykin, the receipt of which was acknowledged by Boykin as hereinabove recited. All of this happened two months before Boykin defaulted on the note that resulted in filing this suit, and appellant knew, or should have known, the terms of the settlement agreement between the parties. In this settlement Boykin conveyed to Canady all of his one-half interest in the B & B Transfer and Baggage Company without in any way disturbing the assets of the City Cab Company against which appellant held a mortgage to secure the balance due on his original note for $18,000.

■ Based upon the foregoing facts and others hereafter stated, appellant contends that appellee is liable for one-half of the balance due on the note in question. However he testified that appellee had never admitted liability on any part of the note. Appellant further testified that he never saw a copy of the contract made by appellee and Boykin until about the time they had a settlement and dissolved their relationship early in January of 1950 but he said he had heard about its provisions. He further testified that he endeavored personally to get appellee to endorse the note

in question soon after he and Boykin made their contract but appellee refused to do so. Appellee also testified that appellant urged him to endorse the note in question but he declined to do so and told appellant that Boykin had never furnished him with a bill of sale or anything else to show what property he owned an interest in as he was required to do under the terms of the contract. The evidence reveals that appellant also sought about the same time to get appellee's attorney who represented appellee in drawing the contract in question for him and Boykin to have appellee endorse the said note but appellee's said counsel declined to do so and advised appellant that the trade between appellee and Boykin had not been consummated because of Boykin's failure to deliver to appellee a bill of sale as required by the terms of the contract. Nevertheless, appellant contended in the trial court and contends here that appellee was obligated to pay one-half of the note because he had assumed that obligation. But, when pressed for the language used by appellee, in addition to that shown in the contract, that amounted to an assumption of the said interest in the said note, appellant replied that appellee had said to him "I'll see that your payments are made on time", which was denied by appellee. It is our opinion that the statement, if made, was not an admission of liability and would not constitute an assumption of the indebtedness as claimed by appellant. Appellee's testimony corroborated that given by appellant to the effect that he always denied liability on any part of the note and he denied liability because he had not signed the note but it was signed by Boykin alone long before he and Boykin executed the contract, which was never consummated as a result of Boykin's failure to comply with its terms.

The record reveals that Canady furnished the money for the payments made on the note while he and Boykin were associated together in the business but he had a full settlement with Boykin and they severed their relationship early in January of 1950. Thereafter on March 10, 1950, Boykin defaulted for the first time on his obligation to make payments on the note.

Four days thereafter on March 14, 1950, appellant took the advantage of the acceleration clause in the note, declared all of the balance of the note, together with interest thereon and attorney fees, due and filed this suit on the same day.

The record reveals that appellant pleaded appellee's liability because of the terms of the written instruments herein referred to and he offered all of them in evidence, contending that appellee was liable because he assumed liability for one-half of the note upon the consummation of the contract between him and Boykin and contending further that the said contract had been consummated. It is our opinion, under the facts presented, that appellant failed to establish liability on the part of appellee for any part of the note in question. The record reveals that appellee promised Boykin that he would assume liability for one-half of the note in question upon consummation of the contract between them but, through fault of Boykin only, the contract was never "fully consummated" as pleaded by appellant. Boykin had the right, because of his failure to comply with the terms of the contract, to settle with appellee and release him from any conditional promise he had made only to Boykin to assume any such indebtedness. Such a settlement was made between Boykin and appellee with the knowledge of appellant some two months before there was any default made on the note and before this suit was filed. Although it appears from the record that appellant knew about all of the transactions between appellee and Boykin, appellant was not a party to any of the transactions between them and his rights were not affected or impaired in any way by reason of any of the said transactions. The settlement made did not disturb any of the assets covered by the chattel mortgage held by appellant to secure the balance due on his note. Appellant's rights were not prejudiced in any manner because of the transactions between appellee and Boykin. Appellant conceded in his testimony that appellee had never admitted liability on the note and that appellee refused appellant's request to endorse the said note. Appellant had the burden of establishing his cause of action, but, for the reasons stated, it is our opinion that he has failed to discharge that burden.

Assuming that appellee did bind himself to assume one-half of the note in question, there is no evidence in the record tending to show that appellant at any time accepted such assumption or that a suit was filed on the note before Boykin released appellee from such assumption, if any existed. There is evidence to the effect that appellant sought appellee as an additional endorser of the note, together with the other security he had, but there is no evidence showing that appellant was willing for appellee alone to assume even one-half of the indebtedness. The evidence conclusively shows also that the first default in payment on the note occurred two months after appellee had been released by Boykin of any promise he might have made concerning the assumption of liability for one-half of the note and this suit was filed some two months after appellee had been released by Boykin from any promise he may have made to assume any part of the indebtedness in question. The rule is well established that where one assumes the debt of an original promisor, and there is a release by the promisor before there is an acceptance on the part of the creditor, or before suit is filed on the claim, then in such case the party assuming the said indebtedness is released, and the creditor has no right of action against said party. Edwards v. Beals, Tex.Com.App., 271 S.W. 887; Huffman v. Western Mortgage & Investment Co., 13 Tex.Civ.App., 169, 36 S.W. 306; Morrison v. Barry, Tex.Civ. App., 30 S.W. 376. There being no evidence here of an acceptance by the creditor, and certainly no suit was filed until after the release was given, then that well recognized rule would prevent appellant's recovery under the facts presented in the case at bar even if it be conceded that appellee assumed liability for one-half of the note in question.

It appears that the trial court, as a matter of precaution, submitted to the jury the question of waiver, and the jury found that Boykin promised on the day the contract in question was executed to furnish

410

to appellee's attorney who drew the contract an itemized list of the property he was to convey to appellee and that appellee did not waive the execution and delivery to him of the bill of sale to the property in question under the terms of the said contract. We do not see that such jury findings are very material but they do strengthen appellee's position and they certainly do not lend any comfort to appellant's position taken in the case.

For the reasons stated appellant's points of error are all overruled and the judgment of the trial court is affirmed.